No. 2015-1574

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

―――――――――――

IMMERSION CORPORATION,

Plaintiff-Appellant,

v.

HTC CORPORATION and HTC AMERICA, INC.,

Defendants-Appellees,

―――――――――――

Appeal from the United States District Court for the District of Delaware in Case No. 1:12-cv-259-TBD, Judge Richard G. Andrews & Judge Timothy B. Dyk (by designation)

―――――――――――

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING APPELLANT**

―――――――――――

*Of Counsel:*

THOMAS W. KRAUSE
  *Acting Solicitor*

WILLIAM LAMARCA
FARHEENA Y. RASHEED
  *Associate Solicitors*
  *United States Patent and*
  *Trademark Office*

BENJAMIN C. MIZER
  *Principal Deputy Assistant*
  *Attorney General*

CHARLES M. OBERLY, III
  *United States Attorney*

MARK R. FREEMAN
BENJAMIN M. SHULTZ
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7211*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3518*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND STATEMENT OF INTEREST ....................................1

STATEMENT OF THE ISSUE ...............................................................4

STATEMENT OF THE CASE.................................................................4

    A.    Statutory And Regulatory Background .........................................4

    B.    Factual Background .........................................................5

SUMMARY OF ARGUMENT.................................................................8

STANDARD OF REVIEW ...................................................................10

ARGUMENT:

    PTO REASONABLY TREATS A CONTINUING APPLICATION
    FILED ON THE SAME DAY ITS PARENT ISSUES AS A PATENT
    AS "FILED BEFORE THE PATENTING" OF THE PARENT...................11

    A.    PTO Has Reasonably Interpreted Section 120 .............................11

    B.    PTO's Interpretation Is Entitled To Deference............................25

CONCLUSION ...............................................................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                    <u>**Page**</u>

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.,*
    747 F.3d 673 (9th Cir. 2014).............................................................30

*Auer v. Robbins,*
    519 U.S. 452 (1997) ....................................................................26

*Baker v. Alther,*
    149 F.2d 942 (C.C.P.A. 1945)........................................................16

*Cathedral Candle Co. v. United States Int'l Trade Comm'n,*
    400 F.3d 1352 (Fed. Cir. 2005).................................................. 27, 28

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ....................................................................25

*Commodity Futures Trading Comm'n v. Schor,*
    478 U.S. 833 (1986) .................................................................. 23, 24

*Cooper Techs. Co. v. Dudas,*
    536 F.3d 1330 (Fed. Cir. 2008)......................................................25

*Exxon Corp. v. Phillips Petroleum Co.,*
    265 F.3d 1249 (Fed. Cir. 2001)......................................................25

*Fessenden v. Wilson,*
    48 F.2d 422 (C.C.P.A. 1931)..........................................................17

*Godfrey v. Eames,*
    68 U.S. (1 Wall.) 317 (1863) .............................................. 2, 9, 17, 22

*Horner v. Andrzjewski,*
    811 F.2d 571 (Fed. Cir. 1987)........................................................30

*Houston v. Lack*,
   487 U.S. 266 (1988) ................................................................. 18, 20

*In re Bauman*,
   683 F.2d 405 (C.C.P.A. 1982) .................................................... 22

*In re Bogese*,
   303 F.3d 1362 (Fed. Cir. 2002) .................................................. 15

*In re Coleman*,
   189 F.2d 976 (C.C.P.A. 1951) .................................................... 16

*Keurig, Inc. v. Sturm Foods, Inc.*,
   732 F.3d 1370 (Fed. Cir. 2013) .................................................. 10

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) ............................................................. 26, 27

*McBride v. Teeple*,
   109 F.2d 789 (C.C.P.A. 1940) .................................................... 16

*Perez v. Mortgage Bankers Ass'n*,
   135 S. Ct. 1199 (2015) ............................................................. 28

*Refac Int'l, Ltd. v. Lotus Dev. Corp.*,
   81 F.3d 1576 (Fed. Cir. 1996) .................................................... 28

*Sebelius v. Auburn Reg'l Med. Ctr.*,
   133 S. Ct. 817 (2013) ............................................................... 23

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ................................................................. 27

*Transco Prods., Inc. v. Performance Contracting, Inc.*,
   38 F.3d 551 (Fed. Cir. 1994) ............................................... 4, 21, 23

iii

*Union Nat'l Bank of Wichita v. Lamb*,
   337 U.S. 38 (1949) ...........................................................14

*United States v. Locke*,
   471 U.S. 84 (1985) ...........................................................18

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) .................................................. 25, 27

*Zenith Radio Corp. v. United States*,
   437 U.S. 443 (1978) .........................................................30

**Statutes:**

Act of July 19, 1952, Pub. L. No. 82-593, 66 Stat. 792 ......................................20

Act of November 14, 1975, Pub. L. No. 94-131, 89 Stat. 685...........................23

Intellectual Property and Communications Omnibus Reform
   Act of 1999, Pub. L. No. 106-113, Appx. I, 113 Stat. 1501...........................23

Leahy-Smith America Invents Act, Pub. L. No. 112-29,
   125 Stat. 284 (2011)...........................................................23

Patent Law Amendments Act of 1984, Pub. L. No. 98-622,
   98 Stat. 3383 ...........................................................23

Patent Law Treaties Implementation Act of 2012,
   Pub. L. No. 112-211, 126 Stat. 1527...................................................23

35 U.S.C. § 2(b)(2)(A) ................................................... 1, 15, 25

35 U.S.C. § 21(a) ........................................................... 2, 12, 14, 15, 19

35 U.S.C. § 120 ....................................................................*passim*

35 U.S.C. § 121...........................................................22

iv

35 U.S.C. § 151 ................................................................................12

35 U.S.C. § 153 ................................................................................13

35 U.S.C. § 154(a)(2) ........................................................................13

**Regulations:**

37 C.F.R. § 1.6(a) .............................................................................20

37 C.F.R. § 1.10(a) ...........................................................................19

37 C.F.R. § 1.10(a)(1) ....................................................................2, 12

37 C.F.R. § 1.78 ...........................................................................5, 26

37 C.F.R. § 1.78(d) ............................................................. 5, 8, 16, 18

**Rules:**

Fed. R. App. P. 4(a)(2) .....................................................................14

Fed. R. App. P. 4(a)(7)(A)(ii) ............................................................14

Fed. R. App. P. 25(a)(2)(A) ..............................................................13

Fed. R. App. P. 25(a)(2)(B) ...............................................................13

Fed. R. App. P. 29(a) ..........................................................................1

Sup. Ct. R. 29.2 ...............................................................................19

**Legislative  Materials:**

H.R. Rep. No. 82-1923 (1952) ......................................................21, 22

S. Rep. No. 82-1979 (1952) ...........................................................21, 22

**Other Authorities:**

2 Anthony William Deller, *Walker on Patents* (1937) .......................................17

Rules of Practice in Patent Cases (April 1951),
    *reprinted in* 35 U.S.C. App. (1951) ...........................................................20, 21

U.S. Patent & Trademark Office:

MPEP § 1309 (9th ed. 2014) ...............................................................30

MPEP § 201.11 (3d ed. 1961) ..................................................... 5, 23, 26, 28

MPEP § 201.11 (4th ed. 1979) ...........................................................28

MPEP § 201.11 (5th ed. 1983) ...........................................................28

MPEP § 201.11 (6th ed. 1995) ...........................................................28

MPEP § 201.11 (7th ed. 1998) ...........................................................28

MPEP § 201.11 (8th ed. 2001) ...........................................................28

MPEP § 211.01(b)(I) (9th ed. 2014) ....................................... 5, 8, 16, 18, 26, 28

### INTRODUCTION AND STATEMENT OF INTEREST

The United States respectfully submits this amicus brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure.

The Patent and Trademark Office (PTO) has for decades treated a continuing application filed on the same day that the parent application becomes a patent as "filed before the patenting" of the parent application, 35 U.S.C. § 120, and therefore entitled to the benefit of the parent application's priority filing date. That longstanding interpretation of Section 120 reasonably fills a void left by Congress in the Patent Act, which does not specify at what time during the day a continuing application is "filed" or the earlier application is "patented." Absent any indication from Congress how the agency should apply Section 120 when both events occur on the same calendar day, PTO has reasonably determined that it will deem continuing applications filed on the same date the patent issues as "filed before the patenting" of the parent application.

That interpretation, which is embodied in a regulation issued pursuant to PTO's express authority to promulgate rules that "govern the conduct of proceedings in the Office," 35 U.S.C. § 2(b)(2)(A), is reasonable and entitled to deference. It resolves a statutory ambiguity in a manner

that provides clarity and certainty for the agency and applicants alike.  It avoids the possibility that patentees will be deprived of a continuation opportunity due to the chronological happenstance of events outside their control.  And it is eminently pragmatic, because it is often impossible for PTO to determine precisely when during the day a continuing application is "filed."  The facts of this case illustrate the point:  Immersion filed the continuing application at issue here by depositing it with the U.S. Postal Service at some point on August 6, 2002, for delivery to PTO by Express Mail—an entirely proper manner of filing under PTO rules authorized by the Patent Act.  *See* 35 U.S.C. § 21(a); 37 C.F.R. § 1.10(a)(1).

The PTO's interpretation, moreover, is consistent with the legislative history of Section 120, which strongly suggests that Congress did not intend the statute to disturb the Patent Office's pre-1952 practice of permitting applications that were filed on the same day a prior application was granted or abandoned to claim the benefit of the earlier application's filing date.  *See Godfrey v. Eames*, 68 U.S. (1 Wall.) 317, 324-26 (1863) (permitting a patentee who withdrew and refiled an application "on the same day" to treat the two applications as "one continuous application, within the meaning of the law").

2

The district court in this case, however, accorded no deference to PTO's interpretation of Section 120 and disregarded the relevant legislative history. Instead, the court imposed an impractical standard under which a factfinder must look at the exact hour, or even minute, in which applications are filed and patents have issued. The district court had no proper basis for setting aside the reasonable and well-settled interpretation given to Section 120 by the expert agency that Congress charged with administering the statute.

If the district court's interpretation were accepted, PTO estimates that more than 13,500 patents issued since 2000 will be exposed to the possibility of invalidation—a development that will surely come as a shock to the many inventors that believed (in conformity with PTO's regulations and longstanding guidance) that they had timely filed their continuing applications. Because PTO's longstanding interpretation is reasonable and entitled to deference, and because substantial public reliance interests strongly counsel against casting aside that interpretation now, the United States has a substantial interest in this case and urges reversal of the district court's decision.

## STATEMENT OF THE ISSUE

Whether the Patent and Trademark Office reasonably treats a continuing application, filed on the same day its parent issues as a patent, as "filed before the patenting" of the parent under 35 U.S.C. § 120.

## STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

Under 35 U.S.C. § 120, inventors who have previously applied for a patent may file "continuing" applications with the Patent and Trademark Office (PTO).  These applications—which include divisional applications, continuation applications, and continuations-in-part—must be based at least in part on information disclosed in the earlier "parent" application, and have at least one inventor in common with it.  *Transco Prods., Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555-56 (Fed. Cir. 1994).  A properly filed continuing application will be given "the same effect . . . as though filed on the date of the prior application."  35 U.S.C. § 120.  To qualify for this priority benefit, however, the continuing application must be "filed before the patenting or abandonment of or termination of proceedings" on the parent application.  *Id.*

4

PTO has implemented Section 120 through a regulation, 37 C.F.R. § 1.78.  As relevant here, that regulation explains that an inventor can file a continuing application, and benefit from the earlier application's filing date, if the continuing application is "copending" with the earlier application.  *Id.* § 1.78(d).  The PTO's Manual of Patent Examining Procedure (MPEP) further clarifies that "[i]f the prior application issues as a patent, it is sufficient for the later-filed application to be copending with it if the later-filed application is filed *on the same date*, or before the date that the patent issues on the prior application."  MPEP § 211.01(b)(I) (9th ed. 2014) (emphasis added).

PTO's interpretation dates back to at least 1961.  *See* MPEP § 201.11 (3d ed. 1961).  By PTO's calculation, between 2000 and the present, the agency has issued over 13,500 patents that began as continuing applications filed on the same day the parent issued as a patent.

## B.    Factual Background

In the operative complaint in this case, plaintiff Immersion Corporation ("Immersion") alleged that two defendants had infringed a number of Immersion's patents related to haptic feedback technology.

5

A122-32.[1]  Defendants sought summary judgment, and among other things

argued that several of Immersion's patents were invalid because they were

anticipated by a July 2001 foreign counterpart application.  A399.

As defendants recognized, *see* A396, all of the challenged patents had

issued as either continuation applications, or continuations in part, that

traced back to applications filed before July 2001.  *See* A23, A46, A67.  The

defendants observed, however, that the chain of priority for each

challenged patent included an application that issued as U.S. Patent No.

7,148,875 ("the '875 patent").  A396.  That '875 patent was itself a

continuation of the application that issued as U.S. Patent No. 6,429,846

("the '846 patent").  A464.  The issue in this appeal arises because the

continuing application that issued as the '875 patent was filed on August 6,

2002, the same day that its parent application issued as the '846 patent.

Defendants contended in district court that the continuing

application that issued as the '875 patent was not "filed before the

patenting" of the '846 patent for purposes of Section 120.  A396.

Accordingly, defendants argued, neither the '875 patent nor any later

---

[1] Citations to pages in the Joint Appendix will be abbreviated "A__."

continuing applications that traced priority through it could claim a priority date earlier than August 6, 2002—more than a year after the July 2001 foreign application that defendants had identified.

The district court agreed with defendants' argument. A7-8. Although PTO has for decades treated a continuing application filed on the same day that the parent application issues to be "filed before the patenting" of the parent under Section 120, the district court refused to accord that interpretation any deference because it thought Section 120 was unambiguous. A6-7. The court did not suggest that any provision of the Patent Act or PTO's regulations specifies when during a given day a continuing application must be deemed "filed," or when precisely the "patenting" occurs. Nevertheless, the district court held that Section 120 requires specific time-of-day evidence—*i.e.*, proof that the continuing application was actually filed earlier in the day than the time at which the parent patent issued. Because the evidence in the case merely showed that the continuation application for the '875 patent was filed on the same day that the parent patent issued, and there was no evidence showing the precise time of day for either the application's filing or the patent's issuance, the court held that Immersion's challenged patents could not

7

have a priority date earlier than August 6, 2002, rendering them invalid.
A7-8.

This appeal followed.

## SUMMARY OF ARGUMENT

Under Section 120, patent applicants can benefit from an earlier
application's filing date if the new application is "filed before the
patenting" of the earlier application.  35 U.S.C. § 120.  Nothing in the Patent
Act, however, indicates when a continuing application should be deemed
"filed" or when precisely "the patenting" occurs.  As a practical matter,
moreover, PTO has never systematically attempted to record the precise
time of day when a patent application is filed, and in many circumstances
it would be infeasible for the agency to do so.  Accordingly, PTO has
adopted the straightforward rule that a continuing application will be
deemed "filed" before the "patenting" of the parent application so long as
the application is filed no later than the day the parent issues.  *See* 37 C.F.R.
§ 1.78(d); MPEP § 211.01(b)(I) (9th ed. 2014).

PTO's longstanding interpretation of Section 120 is reasonable,
practical, and entitled to deference.  It fills a statutory void in a manner that
provides clarity for applicants and examiners alike.  It obviates the need to

8

determine the exact second that an application was filed or a patent issued, thereby avoiding the burden and difficulty of determining and tracking time-of-day information that the agency has not historically collected and does not require for any other purpose. And it negates the risk that inventors will lose patent rights due to the timing of ministerial administrative events outside of their control.

PTO's interpretation, moreover, is most faithful to the legislative history of Section 120, which Congress intended to codify pre-1952 continuation practice. The Supreme Court's decision in *Godfrey v. Eames*, 68 U.S. (1 Wall.) 317 (1863), had long made clear that a patentee may claim the benefit of an earlier filing date when a continuing application is filed on the same day that the parent application ceases to be pending before PTO. Nothing in the history of the 1952 Patent Act suggests that Congress intended to disturb the longstanding practice of treating such same-day continuing applications as "copending" with the parent application and thus entitled to the benefit of the parent's priority filing date. And PTO's approach draws still further support from the fact that in the 50-plus years since PTO first announced its interpretation of Section 120, Congress has

9

not overridden it despite making numerous changes to the section during that time.

The district court should have deferred to PTO's reasonable and longstanding interpretation of Section 120. The agency's interpretation is entitled to *Chevron* deference because it reflects the PTO's authoritative construction of a statute that Congress intended the agency to administer and is embodied in a regulation duly promulgated with the force and effect of law. And PTO's interpretation should also be upheld as a matter of *Skidmore* deference, even if *Chevron* were inapplicable. The district court's contrary view of Section 120 would jeopardize many thousands of patents issued on the strength of PTO's statutory construction. This Court should reverse the district court and uphold the agency's interpretation.

## STANDARD OF REVIEW

The district court, which sits in the Third Circuit, granted summary judgment to the defendants. This Court's review is de novo. *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1372 (Fed. Cir. 2013).

# ARGUMENT

## PTO REASONABLY TREATS A CONTINUING APPLICATION FILED ON THE SAME DAY ITS PARENT ISSUES AS A PATENT AS "FILED BEFORE THE PATENTING" OF THE PARENT

This case involves a quintessential example of the PTO exercising its interstitial interpretative authority to implement the Patent Act and provide sensible rules for the agency's administration of the patent system. PTO's interpretation of Section 120 is consistent with the text, history, and purposes of the statute. It is reasonable, practical, and longstanding. And it is the subject of tremendous reliance interests that should not lightly be set aside. The judgment of the district court should be reversed.

## A.    PTO Has Reasonably Interpreted Section 120

1. In 35 U.S.C. § 120, Congress provided that a continuing application may benefit from the filing date of its parent so long as the newer application is "filed before the patenting or abandonment of or termination of proceedings on the first application" and certain additional requirements are met. *Id.* This timing provision is not difficult to administer when the continuing application is filed on a different calendar day from the date on which the parent application issues as a patent. For any number of reasons, PTO routinely records the date a patent application

11

is filed and the date that a patent issues.  But Congress provided no

guidance for the agency in administering Section 120 when the "fil[ing]"

and the "patenting" occur *on the same calendar day*.

The Act is entirely silent on the question.  Nothing in Section 120 or

any other provision of the Patent Act indicates exactly when during a

calendar day a continuing application should be deemed "filed."  Nor does

any provision of the Patent Act require PTO or patent applicants to track

precise time-of-day filing information or indicate that any legal

consequence should turn on such information.  To the extent Congress

addressed what constitutes "filing" at all, it merely specified that PTO may

prescribe rules providing that any paper "required to be filed in the [PTO]

will be considered filed in the Office on *the date* on which it was deposited

with the United States Postal Service."  35 U.S.C. § 21(a) (emphasis added);

*see also* 37 C.F.R. § 1.10(a)(1) (so providing).

Nor does the Patent Act precisely define when "the patenting"

occurs.  Indeed, the phrase "the patenting" does not appear anywhere else

in the Patent Act.  The provisions addressing the actual issuance of patents

either do not address timing at all or refer only to the date of issuance.  *See*

35 U.S.C. § 151 (stating merely that a patent "may issue" if the applicant

timely pays a fee after receiving notice that his application was successful); *id.* § 153 (indicating only that patents "shall be issued in the name of the United States of America, under the seal of the [PTO], and shall be signed [by PTO's Director] . . . and shall be recorded" by the agency); *id.* § 154(a)(2) (stating merely that a granted patent "shall be for a term beginning on *the date* on which the patent issues" (emphasis added)).

These omissions are significant, because even if PTO wanted to track precise time-of-day information, Congress has provided no indication of what events should matter.  Any number of discrete administrative or ministerial steps could reasonably be deemed the moment in the day when the "filing" of a patent application occurs, depending on the particular route by which the application reaches the agency.  For example, an application could reasonably be deemed filed upon mailing by the applicant; upon physical receipt by PTO; upon administrative docketing by PTO personnel; upon uploading to agency computer servers; or at some other reasonable point.  *Cf.* Fed. R. App. P. 25(a)(2)(B) (providing that a brief or appendix is deemed filed on the date it is deposited with certain kinds of mailing services); Fed. R. App. P. 25(a)(2)(A) (providing that most other appellate documents are timely filed when "the clerk receives the

13

papers"); Fed. R. App. P. 4(a)(2) (explaining that when a notice of appeal is filed after a judgment is announced but before judgment is entered, the notice "is treated as filed on the date of and after the entry"). Indeed, the Patent Act itself recognizes that the concept of "filing" is flexible, as it explicitly recognizes PTO's authority to consider an application "filed" not only on its date of actual deposit with the Postal Service, but even on the date the application "would have been deposited with the . . . Postal Service but for postal service interruptions or emergencies designated by the Director." 35 U.S.C. § 21(a).

Similarly, "the patenting" might reasonably be deemed to occur when the notice of allowance is issued; when the patent is signed; when the issuance of the patent is recorded by the agency; when the signed certificate is deposited with the Postal Service; or at any other reasonable point as determined by PTO. *Cf.* Fed. R. App. P. 4(a)(7)(A)(ii) (deeming a judgment to be "entered" on the date that it is entered on the docket and properly complies with Rule 58(a), or—in the absence of such compliance—150 days after its entry on the docket); *Union Nat'l Bank of Wichita v. Lamb*, 337 U.S. 38, 40-41 (1949) (deeming a court action to have

14

taken place within a 90-day period, even though it actually occurred on the 91st day, when the 90th day was a Sunday).

The failure of the Patent Act to address such questions strongly suggests that Congress did not intend any legal consequence to attach to the precise time of day when "filing" and "patenting" occur.  Indeed, because Congress expressly authorized PTO to treat all papers required to be filed with the agency to be deemed filed "on the date" that they are deposited with the Postal Service, 35 U.S.C. § 21(a), it is difficult to imagine that Congress intended the PTO to determine and record anything other than the date of filing.

2.  Given the silence of the Patent Act on time-of-day issues and the tremendous administrative difficulties associated with resolving such questions, PTO has acted to fill in the gap.  Exercising its authority to establish regulations that "govern the conduct of proceedings in the Office," 35 U.S.C. § 2(b)(2)(A), as well as its inherent authority to adopt reasonable solutions to the practical difficulties that arise in effectuating the patent system, *see In re Bogese*, 303 F.3d 1362, 1368 (Fed. Cir. 2002), PTO has chosen to deem continuing applications filed on the day the parent

15

application issues as "filed before the patenting" of the parent application.
*See* 37 C.F.R. § 1.78(d); MPEP § 211.01(b)(I) (9th ed. 2014).

The regulation adopted by PTO provides that an inventor can file a
continuing application, and benefit from the earlier application's filing
date, so long as the continuing application is "copending" with the earlier
application. 37 C.F.R. § 1.78(d). PTO's use of the term "copending," which
does not appear in Section 120, is intended to invoke the body of judicial
decisions that developed before the 1952 enactment of Section 120. Prior to
1952, continuation practice lacked a clear statutory basis, but the courts
generally permitted an inventor to treat a subsequent patent application as
a continuation of an earlier one if, *inter alia*, the two applications were at
some point "copending." *See, e.g.*, *In re Coleman*, 189 F.2d 976, 978 (C.C.P.A.
1951) (explaining that when an inventor's other applications are
"copending" with the application at issue, the other applications will not
invalidate it as prior art); *Baker v. Alther*, 149 F.2d 942, 944 (C.C.P.A. 1945)
("There can be no question in view of the *copendency* of each of the latter
applications with the former application that appellee is entitled to the
benefit of his earliest date . . . ." (emphasis added)); *McBride v. Teeple*, 109
F.2d 789, 797 (C.C.P.A. 1940) ("Inasmuch as appellee's . . . application was

16

*copending* when his patent was issued, there is a continuity of application and he is entitled to the date for his early application . . . ." (emphasis added)); *Fessenden v. Wilson*, 48 F.2d 422, 424 (C.C.P.A. 1931) ("[I]t is well established that for an application to be [entitled to an earlier application's filing date], the two must at some time be *co-pending* …" (internal quotation marks omitted) (emphasis added)); 2 Anthony William Deller, *Walker on Patents* § 184, at 872 (1937) (same).

The law of "copending" patent applications, in turn, had its foundation in the Supreme Court's decision in *Godfrey v. Eames*, 68 U.S. (1 Wall.) 317 (1863). In that case, an application "was withdrawn and refiled on the same day with an amended specification." *Id.* at 324. The Supreme Court deemed the two applications as "one continuous application, within the meaning of the law," with the result that the new application was entitled to the filing date of the original. *Id.* at 324-26. The Court in *Godfrey* thus permitted a continuing application to benefit from the parent's filing date even when the new application was filed "on the same day" the parent was withdrawn. *Id.*

PTO's regulation invokes this longstanding line of authority by providing that a continuing application will be entitled to the benefit of the

17

parent application's filing date if the two applications are at any point "copending."  37 C.F.R. § 1.78(d).  And if there were any doubt what PTO intended by that interpretation, the Manual of Patent Examining Procedure (MPEP) further clarifies that "[i]f the prior application issues as a patent, it is sufficient for the later-filed application to be copending with it if the later-filed application is filed *on the same date*, or before the date that the patent issues on the prior application."  MPEP § 211.01(b)(I) (9th ed. 2014) (emphasis added).

　　3.  PTO's interpretation of Section 120 is reasonable and pragmatic.  It is entirely commonplace for courts and agencies to adopt discretionary rules that conclusively deem particular types of submissions to have been filed in compliance with a statutory or regulatory deadline, without inquiring into the particular circumstances of each case.  *See, e.g.*, *United States v. Locke*, 471 U.S. 84, 93, 102 n.14 (1985) (noting that even though the statute required filings to be made "prior to December 31st," the agency could reasonably deem a filing to comply if it was postmarked before December 31st and received before January 19th); *Houston v. Lack*, 487 U.S. 266, 272 (1988) (where statute required a notice of appeal to be filed "within thirty days after entry" of judgment, Supreme Court interpreted statute to

be complied with where a *pro se* prisoner tendered his notice to prison officials within thirty days, but it was not received by the clerk until later); Sup. Ct. R. 29.2 (deeming a document "filed" on the date of its mailing in various circumstances); *supra* pp. 13-14 (discussing the Federal Rules of Appellate procedure).

In the same way, PTO's interpretation of Section 120 resolves a statutory ambiguity in a manner that provides a clear rule for applicants and examiners to follow.  It avoids the burden and expense (and attendant disputes) that would be associated with requiring both the agency and applicants to track precise time-of-day filing and issuance data that Congress nowhere expressly contemplated and that the agency has never required.  And it recognizes the practical infeasibility of collecting such information in a variety of common circumstances.

Indeed, it is often impossible to know the exact time at which a continuing application is filed.  Even today, as already noted, an applicant may choose to file an application by depositing it with the Postal Service.  In that event, the document will be "considered filed with the USPTO on the date of deposit" with the Postal Service.  37 C.F.R. § 1.10(a); *see* 35 U.S.C. § 21(a).  That is what happened in this very case.  *See* A498;

19

Immersion Br. 11.  Applications can also be filed through other hard copy methods, in which case the filing "is stamped with the date of receipt" by the PTO, 37 C.F.R. § 1.6(a), without noting any specific time of receipt.

Similarly, even if one could sensibly define the exact moment in time that "patenting" occurs, that precise moment may not be memorialized in any PTO records, and it may be impractical and burdensome for PTO to create and maintain such records—particularly if the applicant is not filing documents and obtaining notice through PTO's electronic system.  There is, moreover, no reason to think Congress intended an inventor's right to file a continuing application to depend on a minute-by-minute chronological happenstance of administrative actions wholly outside of the inventor's control.  *Cf. Houston*, 487 U.S. at 275 (justifying the prison mailbox rule in part because prisoners have no control over when prison officials mail their filings to courts).

The above-mentioned practical problems would have been particularly acute as of 1952, when Section 120 was first enacted.  *See* Act of July 19, 1952, Pub. L. No. 82-593, § 120, 66 Stat. 792, 800.  At that time, all patents would have been issued by physical delivery or mailing, *see* Rules of Practice in Patent Cases § 1.315 (April 1951), *reprinted in* 35 U.S.C. App.

20

(1951), rendering it particularly difficult to know the exact time of issuance. Moreover, PTO's rules at the time allowed applicants to file items using the PTO's drop box up until midnight on a given day, the use of which would not be conducive to establishing an exact moment of filing. *See id.* § 1.6(c) ("[L]etters and other papers may be deposited up to midnight in a box provided at the guard's desk at [the PTO] on weekdays . . . and all papers deposited therein are considered as received in the [PTO] on the day of deposit."). All of these practical problems are avoided by a simple rule deeming a continuing application to be filed before "the patenting" when both events occur on the same day.

PTO's interpretation also comports with the legislative history of Section 120. As both the House and Senate reports for the 1952 Act explained, Section 120 was meant to codify "present law not expressed in the statute, except for the added requirement that the first application must be specifically mentioned in the second." H.R. Rep. No. 82-1923, at 20 (1952); S. Rep. No. 82-1979, at 20 (1952); *see also Transco Prods., Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 556 (Fed. Cir. 1994) ("Prior to 1952, continuing application practice was a creature of patent office practice and case law, and section 120 merely codified the procedural

21

rights of an applicant with respect to this practice.").[2]  That fact is

important because, as already noted, continuation practice before 1952 had

long followed the lead of the Supreme Court's 1863 decision in *Godfrey v.*

*Eames*, which permitted an inventor who withdrew his patent application

and then refiled it "on the same day" to retain the benefit of the original

application's filing date.  *See* 68 U.S. (1 Wall.) at 324-326.  Given Congress's

explicit indication in the legislative history of Section 120 that it did not

intend to alter existing continuation practice (other than to require that the

later application explicitly cross-reference the earlier, as Immersion's

---

[2] In *In re Bauman*, 683 F.2d 405 (C.C.P.A. 1982), the Court of Customs and Patent Appeals stated in a footnote that "[t]he legislative history . . . makes it clear that mere codification, without modification, was not intended," and the court quoted a sentence from both the House and Senate reports indicating that "'Sections 120 and 121 express in the statute certain matters which exist in the law today but which had not before been written into the statute, and in so doing make some minor changes in the concepts involved.'"  *Bauman*, 683 F.2d at 408 n.7 (quoting S. Rep. No. 82-1979 (1952) and H.R. Rep. No. 82-1923 (1952)).  While *Bauman*'s dicta is accurate insofar as it indicates that these statutes did not strictly codify existing law, it is best understood as primarily directed to Section 121 rather than 120.  Indeed, in more detailed sections of both congressional reports (which *Bauman* did not quote from) Congress provided a section-by-section analysis.  That analysis clarified that while Section 121 made "a number of changes" to existing law, the only change contemplated by Section 120 was the added requirement that the continuing application specifically mention its parent.   H.R. Rep. No. 82-1923, at 20 (1952); S. Rep. No. 82-1979, at 20 (1952).

patents do), PTO reasonably construes Section 120 to allow patentees to file a continuing application on the same day that the parent application is granted or abandoned.  *Accord Transco*, 38 F.3d at 557-58 (recognizing that Section 120 was meant to codify existing practice as set out in cases like *Godfrey*).

Subsequent congressional actions provide still more support for PTO's interpretation.  As noted above, PTO has expressly advanced that interpretation of Section 120 since at least 1961.  *See* MPEP § 201.11 (3d ed. 1961).  Since then, Congress has amended Section 120 five different times, yet it has never acted to override PTO's understanding.[3]  That fact speaks volumes.  "[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress."  *Commodity*

---

[3] *See* Act of November 14, 1975, Pub. L. No. 94-131, § 9, 89 Stat. 685, 691; Patent Law Amendments Act of 1984, Pub. L. No. 98-622, § 104(b), 98 Stat. 3383, 3385; Intellectual Property and Communications Omnibus Reform Act of 1999, Pub. L. No. 106-113, Appx. I, § 4503(b), 113 Stat. 1501, 1501A-563; Leahy-Smith America Invents Act, Pub. L. No. 112-29, §§3(f), 15(b), 125 Stat. 284, 288, 328 (2011); Patent Law Treaties Implementation Act of 2012, Pub. L. No. 112-211, §§ 102(5), 202(3), 126 Stat. 1527, 1531, 1536.

*Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (internal quotation marks omitted); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 827 (2013) (invoking this principle when Congress had amended the relevant statute six times in the 40 years since the agency had announced its interpretation).

4.  The district court did not grapple with these issues.  Instead, it concluded that PTO's interpretation was foreclosed by the plain language of the statute because the word "before" is unambiguous and cannot mean "same."  A7 & n.1.  But PTO has never suggested that "before" is an ambiguous term.  Rather, as we have explained, PTO's interpretation responds to the Patent Act's ambiguity concerning when precisely a continuing application is "filed," when "the patenting" of a parent application occurs, and how PTO should apply Section 120 when those two events occurs on the same calendar day.  The district court did not identify anything in the Patent Act that precludes the agency from adopting its long-settled rule, nor could it.  And it is the prerogative of PTO to determine how best to implement the requirements of the Patent Act in the face of congressional silence.

24

**B.    PTO's Interpretation Is Entitled To Deference**

1.  Under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), an agency's reasonable interpretation of an ambiguous statute that it is charged with administering will control, at least where the statutory context demonstrates that Congress expected the agency to speak with the force of law.  *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001).  Among other circumstances, therefore, *Chevron* deference is appropriate when the agency speaks on a subject that it has the authority to address through binding regulations.  *Id.* at 229-30.

PTO has been delegated such authority here.  Under 35 U.S.C. § 2(b)(2)(A), PTO has the authority to "establish regulations" that "govern the conduct of proceedings in the Office."  At minimum, that includes the power to issue "procedural" rules.  *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1335-36 (Fed. Cir. 2008).  And that description surely fits a rule that defines when PTO itself understands applications to be filed with the agency, and acted upon by it.  *Accord Exxon Corp. v. Phillips Petroleum Co.*, 265 F.3d 1249, 1252-53 (Fed. Cir. 2001) (recognizing PTO's authority to construe an applicant's filing "to preserve the applicant's compliance with the filing requirements").

25

As already discussed, PTO exercised its rulemaking authority by interpreting Section 120 in 37 C.F.R. § 1.78, which makes clear that continuing applications are proper, and may benefit from an earlier application's filing date, so long as they are "copending" at any point with the parent application. As we have explained, PTO used the term of art "copending" advisedly, and its reasonable interpretation of the statute is accordingly due *Chevron* deference.

But if more were necessary, PTO has further construed its regulation in the MPEP, which expressly recites the agency's understanding that a continuing application is "copending" with its parent application when the continuing application is filed the same day the parent issues as a patent. MPEP § 211.01(b)(I) (9th ed. 2014); *see also* MPEP § 201.11 (3d ed. 1961). An agency's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation," *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted), and it is well established that an agency can receive *Chevron* deference even if the Court must ultimately look to the agency's interpretative materials to clarify an otherwise ambiguous regulation, *see, e.g., Long Island Care at Home, Ltd. v.*

26

*Coke*, 551 U.S. 158, 162, 168-71 (2007); *Cathedral Candle Co. v. United States Int'l Trade Comm'n*, 400 F.3d 1352, 1362-64 (Fed. Cir. 2005).

2.  Because PTO is entitled to *Chevron* deference, and its interpretation of Section 120 is reasonable, that interpretation should control.  But even if this Court were to conclude that *Chevron* deference were inapplicable, PTO would at least be entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *See Mead*, 533 U.S. at 234-35.

Under *Skidmore*, when an agency's interpretation would not be controlling of its own force, it is nevertheless entitled to a degree of deference based on "all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140; *see also Cathedral Candle*, 400 F.3d at 1366 (explaining that *Skidmore* deference is meaningful, and in appropriate cases requires a court to defer to the agency's interpretation "even if [the court] might not have adopted that construction without the benefit of the agency's analysis").  The weight accorded PTO's interpretation will accordingly turn on such factors as "the degree of the agency's care, its consistency, formality, and relative expertness," as well as the persuasiveness of the agency's position itself.  *Mead*, 533 U.S. at 228.

27

All of these factors favor giving the agency significant deference here. PTO's interpretation of Section 120 has been fully consistent and longstanding, as it can be found in every edition of the MPEP from 1961 forward.[4]  That interpretation is also a formal one that clearly reflects agency-wide policy, as the MPEP is PTO's "official interpretation."  *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576, 1584 n.2 (Fed. Cir. 1996).  As the agency that is responsible for issuing patents, and that receives and processes patent applications, the agency has particular expertise in understanding when applications are pending before it and when those applications have been acted upon.  *Accord Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1207 (2015) (explaining that it is a "basic tenet of administrative law that agencies should be free to fashion their own rules of procedure" (internal quotation marks omitted)).  And while the MPEP may not contain an extensive explanation for the agency's interpretation, this brief surely does, and this Court has found such an explication more than sufficient to warrant *Skidmore* deference.  *See Cathedral Candle*, 400 F.3d

---

[4] *See* MPEP § 201.11 (3d ed. 1961); MPEP § 201.11 (4th ed. 1979); MPEP § 201.11 (5th ed. 1983); MPEP § 201.11 (6th ed. 1995); MPEP § 201.11 (7th ed. 1998); MPEP § 201.11 (8th ed. 2001);  MPEP § 211.01(b)(I) (9th ed. 2014).

at 1367.  Thus, since PTO's interpretation of the statute is eminently reasonable as discussed above, that interpretation warrants *Skidmore* deference (at a minimum), and the district court's contrary interpretation of Section 120 should be reversed.

3.  We add one final point.  For over 50 years, PTO has issued many thousands of patents based on its understanding that a continuing application may be filed the same day that its parent issues as a patent. Based in part on that understanding, PTO has not systematically attempted to collect information on either the precise time of day that an applicant files a continuing application, or the precise time of day that PTO signs, seals, or sends out for delivery its issued patents.  Similarly, because applicants have not been on notice that they needed to keep records at this level of detail, it is likely that many successful patent applicants also do not have such records for their patents.

According to PTO's calculations, just since the year 2000, over 13,500 patents have issued from continuing applications filed the same day their parent application issued as a patent.  And it stands to reason that at least some of these applicants filed this way based on PTO's explicit statement in

29

the MPEP that such applications would be deemed timely.[5]  Yet many if

not most of these patents would be at risk of invalidation if the district

court's view of Section 120 were to be adopted.  Thus, this is not merely a

case to apply the "general rule" that "a long-standing interpretation of a

statute by an agency charged with its administration must be upheld if

reasonable."  *Horner v. Andrzjewski*, 811 F.2d 571, 574 (Fed. Cir. 1987).

Rather, the agency's interpretation has given rise to "substantial reliance

interests," *Zenith Radio Corp. v. United States*, 437 U.S. 443, 457-58 (1978),

that provide even more justification for deference, *see id.  Accord Alaska

Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 685-86 (9th

Cir. 2014) (applying the *Zenith Radio* principle to protect the public's

reliance interests in a government interpretation related to intellectual

property rights).

---

[5] Generally, PTO will give an applicant at least some advance notice
of the date it expects the patent to issue.  *See* MPEP § 1309 (9th ed. 2014).

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's interpretation of Section 120.

Respectfully submitted,

*Of Counsel:*

THOMAS W. KRAUSE
   *Acting Solicitor*

WILLIAM LAMARCA
FARHEENA Y. RASHEED
   *Associate Solicitors*
   *United States Patent and*
   *Trademark Office*

BENJAMIN C. MIZER
   *Principal Deputy Assistant*
    *Attorney General*

CHARLES M. OBERLY, III
   *United States Attorney*

MARK R. FREEMAN
   **/s/ Benjamin M. Shultz**
BENJAMIN M. SHULTZ
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7211*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, D.C. 20530*
   *(202) 514-3518*
   *Benjamin.Shultz@usdoj.gov*

AUGUST 2015

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of

Federal Rules of Appellate Procedure 29(c) and 32(a).  This brief contains

6284 words.


    **/s/ Benjamin M. Shultz**
      Benjamin M. Shultz

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2015, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

**/s/ Benjamin M. Shultz**
Benjamin M. Shultz