**2015-1574**

# United States Court of Appeals
# for the Federal Circuit

IMMERSION CORPORATION,

*Plaintiff – Appellant,*

v.

HTC CORPORATION, HTC AMERICA, INC.,

*Defendants – Appellee*s.

*Appeal from the United States District Court for the District of Delaware in Case No. 1:12-cv-00259-TBD, Circuit Judge Timothy B. Dyk[†].*

## BRIEF OF INTELLECTUAL PROPERTY OWNERS ASSOCIATION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF APPELLANT

Philip S. Johnson, *President*
Kevin H. Rhodes, *Chair, Amicus Brief Committee*
INTELLECTUAL PROPERTY
OWNERS ASSOCIATION
1501 M Street, N.W.
Suite 1150
Washington, D.C. 20005
(202) 507-4500

George F. Pappas
Paul J. Berman
Ranganath T. Sudarshan
John A. Kelly
COVINGTON & BURLING LLP
850 10th Street, NW
Washington, D.C. 20001
(202) 662-5000

*Counsel for Amicus Curiae Intellectual Property Owners Association*

August 12, 2015

---

[†] Judge Dyk, sitting by designation, presided over entry of final judgment while Judge Andrews issued the summary judgment order currently on appeal. *See Immersion Corp. v. HTC Corp.*, No. 12-cv-00259 (D. Del. 2015), ECF No. 385, 386.

## **CERTIFICATE OF INTEREST**

Counsel for Amicus Curiae certifies the following:

1.    The full name of every party or amicus represented by me is:

Intellectual Property Owners Association

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

The party named above in (1) is the real party in interest.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

No publicly-held corporation owns 10% or more of the stock of Amicus Curiae.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

Philip S. Johnson, Kevin H. Rhodes, and Herbert C. Wamsley,
Intellectual Property Owners Association

George F. Pappas, Paul J. Berman, Ranganath T. Sudarshan, and John A. Kelly, Covington & Burling LLP.

        August 12, 2015                              /s/ George F. Pappas
                Date                                      George F. Pappas

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST .............................................................................i

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF THE *AMICUS CURIAE* ...........................................................1

SUMMARY OF THE ARGUMENT ..................................................................2

ARGUMENT..................................................................................3

I.   ACCORDING TO LONGSTANDING PRACTICE, A CLAIM OF
     PRIORITY UNDER 35 U.S.C. § 120 IS ALLOWABLE WHEN A
     CONTINUATION APPLICATION IS FILED ON THE DATE
     THAT THE PARENT PATENT ISSUES .......................................................3

     A.   The District Court's decision contravenes over 150 years of
          patent practice.....................................................................................3

     B.   The only other court to address the issue has held that a
          continuation application can be filed on the day that the parent
          patent issues...........................................................................................6

     C.   The Patent Office has consistently interpreted § 120 to permit
          continuations to be filed on the day that the parent patent issues.........7

     D.   The Patent Office's consistent interpretation of its own
          governing statute, especially on matters within its expertise, is
          entitled to deference. ...........................................................................8

II.  IPO MEMBERS' RELIANCE ON THIS LONGSTANDING
     PRACTICE WILL BE UNDERMINED IF THE DISTRICT
     COURT'S DECISION IS ALLOWED TO STAND ...................................12

CONCLUSION ..................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3PMC, LLC v. Huggins*, Opposition No. 91219982
(T.T.A.B. Jul. 24, 2015) ...................................................................10

*Smith v. Goodyear Dental Vulcanite Co.*,
93 U.S. (3 Otto) 486 (1876) ...............................................................4

*Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*,
467 U.S. 837 (1984) .........................................................................8, 9

*Encyclopaedia Britannica, Inc. v. Alpine Electronics of America, Inc.*,
609 F.3d 1345 (Fed. Cir. 2010) ...........................................................7

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) ...........................................................8

*Godfrey v. Eames*,
68 U.S. (1 Wall.) 317 (1863) ......................................................*passim*

*In re Henriksen*,
399 F.2d 253 (CCPA 1968) ..........................................................11, 12

*In re Hogan*,
559 F.3d 595 (CCPA 1977) ..................................................................5

*In re Kaghan*,
387 F.2d 398 (CCPA 1967) ................................................................11

*MOAEC, Inc. v. MusicIP Corp.*,
568 F. Supp. 2d 978 (W.D. Wis. 2008) ......................................*passim*

*Molins PLC v. Textron, Inc.*,
48 F.3d 1172 (Fed. Cir. 1995) .............................................................8

*Patlex Corp. v. Mossinghoff*,
758 F.2d 594 (Fed. Cir. 1985) ...........................................................11

*Racing Strollers, Inc. v. TRI Indus., Inc.*,
878 F.2d 1418 (Fed. Cir. 1989) ...........................................................5

*Transco Prods. Inc. v. Performance Contracting, Inc.*,
    38 F.3d 551 (Fed. Cir. 1994) ............................................................5, 6

*Ultratec, Inc. v. Sorenson Communications, Inc.*,
    45 F. Supp. 3d 881 (W.D. Wis. 2014) .................................................7

*Wyeth Holdings Corp. v. Sebelius*,
    603 F.3d 1291 (Fed. Cir. 2010) .........................................................10

**Statutes**

35 U.S.C. § 120 ...............................................................................*passim*

*Commentary on The New Patent Act*, 35 U.S.C.A., p. 1 (1954) .............................5

**Other Authorities**

Federal Rule of Appellate Procedure 29 ....................................................1

H.R. 9133, 81st Cong., 2d Sess. § 119 (1950) ............................................5

H.R. Rep. No. 82-1923, at 20 (1952) ........................................................6

75 J. Pat. & Trademark Off. Soc'y 161, 192 (1993) ..................................5

Manual of Patent Examining Procedure § 4-1-11, -12 (1948) ...................8

Manual of Patent Examining Procedure § 201.11 (2d ed, 3d rev. 1957) .................8

Manual of Patent Examining Procedure § 211.01(b)(I) (9th ed. 2014)................7, 8

Manual of Patent Examining Procedure § 711.02(c).........................................7, 10

S. Rep. No. 82-1979, at 20 (1952) ...........................................................6

# INTEREST OF THE *AMICUS CURIAE*

Amicus Curiae Intellectual Property Owners Association is a trade association representing companies and individuals in all industries and fields of technology that own or are interested in intellectual property rights.[1] IPO's membership includes more than 200 companies and more than 12,000 individuals who are involved in the association either through their companies or as an inventor, author, executive, law firm, or attorney member. Founded in 1972, IPO represents the interests of all owners of intellectual property. IPO regularly represents the interests of its members before Congress and the United States Patent and Trademark Office and has filed amicus curiae briefs in this Court and other courts on significant issues of intellectual property law. The members of IPO's Board of Directors, which approved the filing of this brief, are listed in the Appendix.[2]

---

[1] No counsel for a party authored this brief in whole or in part, and no such counsel of a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than the Amicus Curiae or its counsel made a monetary contribution to its preparation or submission. IPO files this with the consent of the parties as required by Federal Rule of Appellate Procedure 29(a) and Federal Circuit Rule 29(c).

[2] IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

## SUMMARY OF THE ARGUMENT

Ever since the mid-nineteenth century Supreme Court decision of *Godfrey v. Eames*, 68 U.S. (1 Wall.) 317 (1863), in which the Court held that a continuation application can claim priority to a parent application if the continuation is filed on the day its parent issues, patent applicants have relied on this ruling when making decisions about when to file continuation applications that claim priority to prior applications. When Congress codified this judicially-created rule governing priority in the Patent Act of 1952, there was no expressed intention to overrule this aspect of continuation application practice. Indeed, the only other district court to address the issue held that the codification of the patent laws left unchanged the ability to file a continuation on the day the parent issues. *See MOAEC, Inc. v. MusicIP Corp.*, 568 F. Supp. 2d 978 (W.D. Wis. 2008). This holding was consistent with over fifty years of Patent Office guidance, expressed in the Manual of Patent Examining Procedures ("M.P.E.P.").

The district court in this case erroneously failed to give deference to the Patent Office's longstanding interpretation of 35 U.S.C. § 120, which had allowed continuations to be filed on the day the parent patent issues. While the statute requires that a continuation be filed "before" the parent application is issued, the statute is silent as to when issuance occurs. The Patent Office's reasonable interpretation is therefore entitled to deference not only because it is consistent with over 150 years of legal

precedent, but also because many, many patent applicants have relied on it in their pursuit of valuable patent rights over that time.

## ARGUMENT

## I.  ACCORDING TO LONGSTANDING PRACTICE, A CLAIM OF PRIORITY UNDER 35 U.S.C. § 120 IS ALLOWABLE WHEN A CONTINUATION APPLICATION IS FILED ON THE DATE THAT THE PARENT PATENT ISSUES

The body of law governing continuation practice has been announced by the courts, codified in the Patent Act, and implemented in the rules controlling practice before the Patent Office. For over a century and a half, patent applicants have relied on this body of law, part of which allows continuation applications to be filed up-to and including the day on which a parent application is issued, abandoned, or terminated. The district court's decision in this case will undermine the reliance that those applicants have placed in the laws and rules governing continuation practice.

### A.  The District Court's decision contravenes over 150 years of patent practice.

The roots of continuation practice can be traced back to the 1863 Supreme Court case of *Godfrey v. Eames*, 68 U.S. (1 Wall.) 317 (1863). In that case, the patentee filed a patent application well within the on-sale bar period, which at the time was two years. *Id.* at 318. The Patent Office rejected the application for lack of novelty based on other prior art. *Id.* Rather than seeking further examination of the original application, the patentee opted to withdraw his application, and *on the same*

*day*, filed a new application that resulted in the patent-in-suit. *Id.* at 318–19. The defendant argued that by withdrawing his original application, the patentee's second application lost entitlement to the first application's priority date, and intervening sales by the patentee should render the patent-in-suit invalid because the second application was filed after the on-sale bar period had run. *See id.* at 321. The Supreme Court disagreed, holding that "if a party choose to withdraw his application for a patent . . . intending at the time of such withdrawal to file a new petition, and he accordingly do so, the two petitions are to be considered as parts of the same transaction, and both as constituting *one continuous application*, within the meaning of the law." *Id.* at 325–26 (emphasis added). Thus, per the rule in *Godfrey*, a continuation filed on the *same day* as its parent application's withdrawal is entitled to the parent's priority date.

*Godfrey*'s rule has persisted since the late nineteenth century in judicial decisions and Patent Office practice. *Cf. Smith v. Goodyear Dental Vulcanite Co.*, 93 U.S. (3 Otto) 486 (1876). Under these precedents and practices, patentees were able—for over 150 years—to file continuation applications on the day that the parent application was withdrawn, terminated, or issued as a patent, so long as the applications were part of one "continuous effort," or in other words, if they were "copending." *See id.* at 500.

When continuation practice was codified in Section 120 of the Patent Act of 1952, that codification was intended to "represent[] present law not expressed in the statute." *In re Hogan*, 559 F.3d 595, 603 (CCPA 1977) (quoting 35 U.S.C. § 120, reviser's note); *see also* P. J. Federico, *Commentary on The New Patent Act*, 35 U.S.C.A., p. 1 (1954), *reprinted in* 75 J. Pat. & Trademark Off. Soc'y 161, 192 (1993) (noting that continuation practice "was not specified in the old statute but was developed by decisions of the courts beginning with a decision of the Supreme Court of 1864, *Godfrey v. Eames*, 68 U.S. 317"). Indeed, P.J. Federico observed that the statutory requirement of "copendency" of two applications was "substantially the same as existed under the prior case law." *Id.* at 193; *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 556 (Fed. Cir. 1994) ("Prior to 1952, continuing application practice was a creature of patent office practice and case law, and section 120 merely codified the procedural rights of an applicant with respect to this practice."); *Racing Strollers, Inc. v. TRI Indus., Inc.*, 878 F.2d 1418, 1421 (Fed. Cir. 1989) ("In other words, § 120 was a codification of case law of which it was the first statutory expression."). In fact, a prior draft of the provision that eventually became § 120 simply required that "the disclosure of the later application has been continuously pending in the Patent Office since the date of the prior application," H.R. 9133, 81st Cong., 2d Sess. § 119 (1950). Under the *Godfrey* rule, an application

—5—

filed on the same day as its parent application's withdrawal constitutes a "continuous" application entitled to the parent's priority date. Therefore, § 120 should be interpreted in a similar manner for patented applications such that a continuation application can claim priority if it is filed on the same day that its parent application issues as a patent.

The legislative history confirms that § 120 was a provision that represented "present law not expressed in the statute, except for the added requirement that the first application must be specifically mentioned in the second." S. Rep. No. 82-1979, at 20 (1952); H.R. Rep. No. 82-1923, at 20 (1952). Notably, the legislative history says nothing about overruling *Godfrey* or changing its rule that allows continuation applications to be filed on the same day that the parent application is withdrawn or matures into a patent. *Transco*, 38 F.3d at 557.

**B.    The only other court to address the issue has held that a continuation application can be filed on the day that the parent patent issues.**

In recognition of this longstanding rule, the only other district court to address the specific issue presented in this case has held that a continuation application can be filed on the day that the parent application issues as a patent without a loss of priority. In *MOAEC*, the defendant argued that the patent-in-suit was invalidated by an ancestor patent in its own family because the patent-in-suit's application was filed on the same day, rather than "before" the day, that the parent patent issued, thus

losing entitlement to its oldest ancestor's priority date. 568 F. Supp. 2d at 981. Rather than quibbling over the timing of patent-in-suit's filing relative to the parent's issuance, Judge Crabb determined that the same day filing satisfied the "copendency requirement" of § 120 because the Patent Office has consistently defined "before" to mean "not later than." *Id.* (citing Manual of Patent Examining Procedure § 711.02(c)). Furthermore, Judge Crabb held that this interpretation is consistent with § 120 because "the statute is silent about the specific period of time that should be used to determine whether a patent was filed 'before' a patent issued on the parent application." *Id.* at 981–82. Ultimately, the court deferred to the Patent Office because of the statute's silence, the history of reliance on the M.P.E.P., and the Patent Office's specialized experience regarding patent procedure. *Id.* at 982.[3]

### C. The Patent Office has consistently interpreted § 120 to permit continuations to be filed on the day that the parent patent issues.

The Patent Office's guidance regarding copendency, M.P.E.P. § 211.01(b)(I) (9th ed. 2014), is explicit:

---

[3] Following this Court's decision in *Encyclopaedia Britannica, Inc. v. Alpine Electronics of America, Inc.*, 609 F.3d 1345 (Fed. Cir. 2010), which left for another day the question of "whether filing a continuation on the day the parent issues results in applications that are co-pending as required by the statute," *id.* at 1352, Judge Crabb was invited to reverse her decision in *MOAEC*. Judge Crabb rejected this invitation in *Ultratec, Inc. v. Sorenson Communications, Inc.*, 45 F. Supp. 3d 881 (W.D. Wis. 2014), concluding that no good reason for doing so had been presented that was not already addressed and rejected in *MOAEC*. *Id.* at 910.

> Copendency is defined in the clause which requires that the later-filed application must be filed before: (A) the patenting of the prior application; (B) the abandonment of the prior application; or (C) the termination of proceedings in the prior application. *If the prior application issues as a patent, it is sufficient for the later-filed application to be copending with it if the later-filed application is filed on the same date*, or before the date that the patent issues on the prior application.

*Id.* (emphasis added). Using nearly verbatim language, the Patent Office's guidance has allowed for continuation applications to be filed on the day that the parent patent issues since the 1950s. *See, e.g.*, M.P.E.P. § 201.11 (2d ed, 3d rev. 1957) ("If the first application issues as a patent, it is sufficient for the second application to be copending with it if the second application is filed *on or before* the date of patenting of the first application"). Even before the Patent Act of 1952, the Patent Office's rules focused on the notion of "copendency" as set forth in *Godfrey. See* M.P.E.P. § 4-1-11, -12 (1948).

### D.     The Patent Office's consistent interpretation of its own governing statute, especially on matters within its expertise, is entitled to deference.

While the M.P.E.P. "does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations," *MOAEC*, 568 F. Supp. 2d at 981, the Patent Office's interpretation of the statute it administers is entitled to some level of deference. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425 (Fed. Cir. 1988) (citing *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 844 (1984));

*Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995) ("[The M.P.E.P.] is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith."). In this case, the district court held that no *Chevron* deference is due because, in its view, the statute is not silent on the issue of whether two applications are copending when the continuation is filed on the day that the parent application issues. In the district court's view, "before" literally means demonstrably prior to a given instant in time, regardless of the imprecision in (or inability to measure) that precise moment in time. But it is precisely this level of detail as to the temporal granularity of "before" on which the statute is glaringly silent. The district court's holding that no *Chevron* deference is due requires one to adopt faulty logic, namely, that the statute requires action "before" a given instant in time when that moment in time is not necessarily ascertainable. Indeed, the statute and the regulations are silent about the precise time when a patent application is considered to issue. Thus, there is ambiguity as to when a patent application must be filed to be "before" a patent issues on the parent application.

By requiring a continuation application to be filed "before" the "patenting" of the parent application, *see* 35 U.S.C. § 120, there is no clearly defined deadline by which a continuation must be filed to maintain copendency. In particular, "patenting" could occur on the issue date when the clock strikes twelve o'clock in the

—9—

morning, when the Patent Office opens, when the patentee is first sent a copy of the issued patent, when the patent is published in the Official Gazette, or at any other time on the issue date. Furthermore, a continuation application could be filed a day, a minute, a second, or even a fraction of a second before the patent issues (whenever that is deemed to be) and still be filed "before" patenting. Given the large potential for confusion caused by the statute's reference to "before" and the various alternatives for when "patenting" could occur, the Patent Office's decision to interpret "before" to mean "not later than," *see* M.P.E.P. § 711.02(c), is eminently reasonable. In effect, the Patent Office has deemed patenting to occur at the end of the day when the patent issues. *See* M.P.E.P. § 211.01(b)(I); *cf. 3PMC, LLC v. Huggins*, Opposition No. 91219982 (T.T.A.B. Jul. 24, 2015) (holding that two documents filed electronically on the same day are filed "at the same instant" for procedural purposes in the context of trademark proceedings). The Patent Office's interpretation provides the added benefit of fixing a single, definite time by which to file an application to maintain copendency—that is, by midnight on the day of patenting. The Patent Office's interpretation of "before" in the M.P.E.P. in this context to mean "not later than" is consistent with the statute, not to mention over 150-year-old Supreme Court precedent, and is therefore entitled to deference. *Wyeth Holdings Corp. v. Sebelius*, 603 F.3d 1291, 1298–99 (Fed. Cir. 2010) ("[A] court must defer to an agency's reasonable interpretation of a statute and must not substitute its own judgment for that

of the agency even if the court might have preferred another interpretation and even if the agency's interpretation is not the only reasonable one.").

Furthermore, the M.P.E.P.'s frequent use by patent lawyers and examiners when communicating with patent applicants entitles them to "rely . . . on the provisions of the [M.P.E.P.] in the prosecution of [their] patent application[s]." *MOAEC*, 568 F. Supp. 2d at 981 (quoting *In re Kaghan*, 387 F.2d 398, 401 (CCPA 1967)); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 606 (Fed. Cir. 1985) ("The PTO operates in accordance with detailed rules and regulations, including those set out in the [M.P.E.P.] which is made available to the public and which has been held to describe procedures on which the public can rely."). *In re Henriksen*, 399 F.2d 253 (CCPA 1968), is instructive on this point. In that case, the applicant sought to establish priority not to the current application's parent or grandparent, but to its great grandparent. *Id.* at 255. Based on a plausible reading of the statute, which the Board of Patent Appeals and Interferences adopted, the examiner maintained that a claim of priority could last no longer than three applications, which would render some of the current application's ancestors invalidating prior art. *Id.* In recognizing that "it is clear from the express words of the committe [sic] reports and from the reviser's notes that the practice prior to the 1952 Act is pertinent," *id.* at 258, this Court's predecessor overruled the examiner and Board because the Patent Office's prior

practice allowed priority claims longer than three applications and there was no indication that with the 1952 Patent Act Congress intended to change this aspect of continuation practice, *id* at 258–59. The court concluded:

> The action of the board is akin to a retroactive rule change which may have the effect of divesting applicants of valuable rights to which, but for the change in Patent Office position brought about by the board's decision, they were entitled. Nothing appears in the Patent Office Rules of Practice or the [M.P.E.P] which sanctions such a result.

*Id.* at 261–62. In much the same way, Amicus Curiae is concerned that the district court's decision in this case will have the effect of divesting patentees of valuable rights to which, but for the change in law effected by the district court, they are entitled. Such a loss of rights would be contrary to the express wording of the M.P.E.P.—a Patent Office document on which patent applicants should be able to rely—as well as century-and-half old Supreme Court precedent.

## II.   IPO MEMBERS' RELIANCE ON THIS LONGSTANDING PRACTICE WILL BE UNDERMINED IF THE DISTRICT COURT'S DECISION IS ALLOWED TO STAND

The district court's decision not only impacts the Appellant in this case, but also other patent applicants who justifiably relied on established law when defining their patent application procedures. To demonstrate the potential implications of an affirmance in this case, Amicus Curiae conducted an anonymous survey that asked its member companies the following question:

> Has your patent prosecution department or your outside counsel ever filed a continuation on the day when its parent patent issues?

About 40 member companies of Amicus Curiae responded. Based on the results received, over half of the responding members have relied on the Patent Office's longstanding practice, which is in keeping with the Supreme Court's precedents, to allow continuations to be filed on the day that the parent patent issues:



Percent of respondents who have filed continuations on the day the parent patent issues

No 42%

Yes 58%

All such applications could be at risk of invalidation by predecessor patents or published applications in view of the district court's ruling in this case.

The district court's decision in this case will detrimentally impact more than Amicus Curiae's member companies. To demonstrate this point, Amicus Curiae

requested Ocean Tomo, LLC[4] to perform an analysis of all currently-in-force patents using its comprehensive patent database, to calculate the breadth of patents that may be affected by the district court's holding in this case, if adopted by this Court. Per Ocean Tomo's analysis, as of May 1, 2015, of the 1,474,712 in-force patents that resulted from continuation applications, fully 12,300 have a filing date that is the same as the issue date of the parent. Notably, this figure is conservative to the extent it does not account for patents that resulted from parent applications that were abandoned or terminated on the day that the patent application was filed or that had an ancestor filed on the same day its parent was issued, abandoned, or terminated. Ocean Tomo estimates that an additional 30,000 patents or so could fall into these categories.

As the data above demonstrates, Amicus Curiae's members and others have relied on an interpretation of § 120 that is at odds with the district court's decision under review. If the Court were to affirm that decision, it would call into question the validity of a sizable number of issued patents—patents that were prosecuted in a manner consistent with Patent Office practice and Supreme Court precedent dating

---

[4] Ocean Tomo, LLC, an IPO member, is a firm that provides opinion, management, and advisory services centered on intellectual property assets. Its practice offerings related to intellectual property assets include financial expert testimony, valuation, technical insights, strategy, ratings, risk management, venture development, investments, and transaction brokerage.

back over 150 years. There is no reasonable justification for (and no countervailing benefits supporting) such a capricious, harmful departure from long-standing practice.

## CONCLUSION

For these reasons, the Court should hold that continuations that are filed on the day that the parent patent issues should be able to claim priority to the parent application's priority date.

Dated: August 12, 2015                    Respectfully submitted,


                                          /s/ George F. Pappas
Philip S. Johnson, *President*            George F. Pappas
Kevin H. Rhodes, *Chair, Amicus Brief*    Paul J. Berman
    *Committee*                 Ranganath T. Sudarshan
INTELLECTUAL PROPERTY                     John A. Kelly
OWNERS ASSOCIATION                        COVINGTON & BURLING LLP
1501 M Street, N.W.                       850 10th Street, NW
Suite 1150                                Washington, D.C. 20001
Washington, D.C. 20005                    (202) 662-5000
(202) 507-4500

                                          *Counsel for Amicus Curiae*
                                          *Intellectual Property Owners Association*

# APPENDIX

# APPENDIX[1]

## Members of the Board of Directors
## Intellectual Property Owners Association

Steven Arnold
    Micron Technology, Inc.

Edward Blocker
    Koninklijke Philips N.V.

Tina M. Chappell
    Intel Corp.

William J. Coughlin
    Ford Global Technologies LLC

Robert DeBerardine
    Sanofi-Aventis

Anthony DiBartolomeo
    SAP AG

Daniel Enebo
    Cargill, Inc.

Barbara A. Fisher
    Lockheed Martin

Louis Foreman
    Enventys

Scott M. Frank
    AT&T

David A. Frey
    Rolls-Royce Corp.

Darryl P. Frickey
    Dow Chemical Co.

Krish Gupta
    EMC Corporation

Henry Hadad
    Bristol-Myers Squibb Co.

Carl B. Horton
    General Electric Co.

Michael Jaro
    Medtronic, Inc.

Philip S. Johnson
    Johnson & Johnson

Charles M. Kinzig
    GlaxoSmithKline

David J. Koris
    Shell International B.V.

William Krovatin
    Merck & Co., Inc.

Allen Lo
    Google Inc.

Timothy Loomis
    Qualcomm, Inc.

Thomas P. McBride
    Monsanto Co.

Steven W. Miller
    Procter & Gamble Co.

[1]IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

Micky Minhas
    Microsoft Corp.

Douglas K. Norman
    Eli Lilly and Co.

Salvatore Pace
    Praxair, Inc.

Richard F. Phillips
    Exxon Mobil Corp.

Dana Rao
    Adobe Systems Inc.

Kevin H. Rhodes
    3M Innovative Properties Co.

Curtis Rose
    Hewlett-Packard Co.

Matthew Sarboraria
    Oracle USA Inc.

Manny Schecter
    IBM Corp.

Steven J. Shapiro
    Pitney Bowes Inc.

Dennis C. Skarvan
    Caterpillar Inc.

Daniel J. Staudt
    Siemens Corp.

Brian K. Stierwalt
    ConocoPhillips

Brian Suffredini
    United Technologies Corp.

James J. Trussell
    BP America, Inc.

Roy Waldron
    Pfizer, Inc.

Michael Walker
    DuPont

BJ Watrous
    Apple Inc.

Stuart L. Watt
    Amgen, Inc.

Charlotte Whitaker
    Motorola Solutions, Inc.

Jon D. Wood
    Bridgestone Americas Holding,
    Inc.

Michael Young
    Roche, Inc.

[1]IPO procedures require approval of positions in briefs by a two-thirds majority of directors present and voting.

## United States Court of Appeals
## for the Federal Circuit

*Immersion Corporation v. HTC Corporation,* 2015-1574

### PROOF OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by counsel for Amicus Curiae to print this document. I am an employee of Counsel Press.

On **August 12, 2015** counsel has authorized me to electronically file the foregoing **Brief for Amicus Curiae** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Joseph R. Palmore
(principal counsel)
Marc A. Hearron
Bryan Leitch
Morrison & Foerster LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20008
202-887-6940
jpalmore@mofo.com
mhearron@mofo.com
bleitch@mofo.com

Harold J. McElhinny
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105
415-268-7178
hmcelhinny@mofo.com

Marc David Peters
Bryan J. Wilson
Morrison & Foerster LLP
755 Page Mill Road
Palo Alto, CA 94304
650-813-5600
mdpeters@mofo.com
bwilson@mofo.com

*Counsel for Appellant*

Dan L. Bagatell
(principal counsel)
Perkins Coie LLP
2901 N Central Avenue
Phoenix, AZ 85012
602-351-8250
dbagatell@perkinscoie.com

Ryan J. McBrayer
Perkins Coie, LLP
1201 Third Avenue, 40th Floor
Seattle, WA 98101
206-359-3073
rmcbrayer@perkinscoie.com

John Peter Schnurer
Perkins Coie, LLP
11988 El Camino Real, Suite 200
San Diego, CA 92130
858-720-5705
jschnurer@perkinscoie.com

*Counsel for Appellees*

Paper copies will also be mailed to the above principal counsel at the time paper copies are sent to the Court.

Any other counsel for Amicus Curiae, appearing at the time of this filing, will be served only via the Court's CM/ECF notice.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

August 12, 2015                          /s/ Robyn Cocho
                                         Counsel Press

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief of *Amicus Curiae* complies with the type-volume limitation of Fed. R. App. P. 29 and Fed. R. App. P. 32(a)(7)(B)(i) and contains 3,294 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R. 32(b).

I certify that this brief complies with the type-face requirements of Fed. R. App. P. 29 and Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been composed in a proportionally-spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.

/s/ George F. Pappas
George F. Pappas
COVINGTON & BURLING LLP
850 10th Street, NW
Washington, DC 20001
Telephone: (202) 662-5594
Fax: (202) 778-5594
Email: gpappas@cov.com

*Counsel for Amicus Curiae*
*Intellectual Property Owners Association*