2015–1574

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IMMERSION CORPORATION,

*Plaintiff–Appellant*,

v.

HTC CORPORATION and HTC AMERICA, INC.,

*Defendants–Appellees*

Appeal from the United States District Court for the District of Delaware
in Case No. 1:12-cv-000259, Judges Richard G. Andrews and Timothy B. Dyk

APPELLEES' RESPONSE BRIEF

Ryan J. McBrayer
Eric D. Miller
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101–3099
Phone:   (206) 359–8000
E-mail:   RMcBrayer@perkinscoie.com
          EMiller@perkinscoie.com

John P. Schnurer
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, California 92130–2594
Phone:   (858) 720–5705
E-mail:   JSchnurer@perkinscoie.com

Dan L. Bagatell
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012–2788
Phone:   (602) 351–8250
E-mail:   DBagatell@perkinscoie.com

Michael J. Engle
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304–1212
Phone:   (650) 838–4326
E-mail:   MEngle@perkinscoie.com

Attorneys for Appellees

November 16, 2015

### CERTIFICATE OF INTEREST

Counsel for defendants–appellees HTC Corporation and HTC America, Inc. certifies the following:

The full names of every party represented by me are:

HTC Corporation and HTC America, Inc.

The name of the real parties in interest (if the parties named in the caption are not the real party in interest) represented by me are:

n/a

The names of all parent corporations and any publicly held companies that own 10% or more of the stock of the party represented by me are:

HTC America, Inc. is a wholly-owned subsidiary of HTC America Holding, Inc., which is a wholly-owned subsidiary of HTC Corporation. HTC Corporation is a publicly held corporation that has no parent corporation. No publicly held corporation owns 10% or more of HTC Corporation's stock.

The names of all law firms and lawyers that appeared for the parties now represented by me in the trial court or that are expected to appear in this Court are:

#### PERKINS COIE LLP

| | | |
|---|---|---|
| Kyle M. Amborn | Dan L. Bagatell | James B. Coughlan |
| Michael J. Engle | Ryan B. Hawkins | Cheng C. (Jack) Ko |
| Sher S. Kung (departed) | Yun (Louise) Lu | Ryan J. McBrayer |
| Christina J. McCullough | Eric D. Miller | Lane M. Polozola |
| Jonathan R. Putman | John P. Schnurer | Brandon M. White |
| Terrance J. Wikberg | Kai Zhu (departed) | |

#### ASHBY & GEDDES, P.A.

| | | |
|---|---|---|
| John G. Day | Andrew Colin Mayo | Tiffany Geyer Lydon |

Dated:  November 16, 2015          /s/ Dan L. Bagatell

Dan L. Bagatell

– i –

## TABLE OF CONTENTS

Certificate of Interest ......................................................................i

Table of Authorities......................................................................iv

Table of Abbreviations and Conventions ............................................ xii

Related Cases ........................................................................... xiii

Introduction...............................................................................1

Statement of Issues .......................................................................3

Statement of the Case ....................................................................3

    A.   Immersion's chain of patent applications and its failure to file the '940 follow-on application before the '846 patent issued.........................5

    B.   The district court's summary judgment that the patents on appeal were not entitled to the filing date of the '846 patent and thus were invalid for anticipation ................................................................7

Summary of Argument ...................................................................9

Argument ...............................................................................12

    A.   The patents on appeal were not entitled to the filing date of the '846 patent because Immersion did not file its '940 application "before" the '846 patent issued, as 35 U.S.C. § 120 requires ..................12

        1.   As the Supreme Court and every circuit to consider the issue have held, "before" means "before," not "on or before" or "not later than" ......................................................................14

        2.   Immersion's efforts to create an ambiguity are unavailing.............18

        3.   The Supreme Court's decision in *Godfrey v. Eames* did not address the priority issue in this case ...............................24

        4.   There was no settled judicial interpretation or administrative practice before Section 120 was adopted, and there is no evidence that Congress shared Immersion's view before or after enactment of Section 120 .......................................28

    5.    Congress has not "ratified" the PTO's obscure practice by its silence ...........................................................................32

B.    This Court should not defer to the MPEP's reading of "before" as meaning "on or before" and "not later than" ...........................34

    1.    The MPEP is not entitled to *Chevron* deference ..............................34

    2.    Even if *Chevron* applied, the MPEP's interpretation could not withstand scrutiny................................................................39

    3.    *Auer* deference does not apply here..................................................41

    4.    *Skidmore* deference is not warranted because the PTO's interpretation is unpersuasive ...........................................43

C.    Reliance interests do not justify perpetuating the PTO's misinterpretation of Section 120 .............................................48

D.    The district court correctly recognized that Immersion did not carry its burden of producing evidence of an earlier filing date once HTC made a *prima facie* case of invalidity....................................52

Conclusion .................................................................................................56

Certificate of Compliance........................................................................57

Proof of Service .......................................................................................58

Statute, Regulation, and MPEP Section at Issue  ....................................... back cover

## TABLE OF AUTHORITIES

**Cases**                                                                                  **Pages**

*A. v. B.*,
  51 U.S.P.Q. 81 (Comm'r Pat. 1941) ..................................................28

*Abbott Labs. v. Johnson & Johnson, Inc.*,
  524 F. Supp. 2d 553 (D. Del. 2007),
  *aff'd*, 297 F. App'x 966 (Fed. Cir. 2008) ........................................19

*Application Filed Apr. 17, 1940, In re*,
  51 U.S.P.Q. 80 (Comm'r Pat. 1941) ..................................................28

*Application Filed Jul. 10, 1940, In re*,
  49 U.S.P.Q. 566 (Comm'r Pat. 1941) ...............................................28

*Auer v. Robbins*,
  519 U.S. 452 (1997) ..............................................2, 10, 41, 42, 43

*Badische Anilin & Soda Fabrik v. A. Klipstein & Co.*,
  125 F. 543 (C.C.S.D.N.Y. 1903) .....................................................29

*Barrett v. Hart*,
  1918 C.D. 62, 256 O.G. 224 (Comm'r Pat. 1918) ...........................28

*Bauman, In re*,
  683 F.2d 405 (C.C.P.A. 1982) ........................................................30

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
  661 F.3d 629 (Fed. Cir. 2011) ........................................................36

*Bilski v. Kappos*,
  561 U.S. 593 (2010) .......................................................................14

*Bradford Co. v. Conteyor*,
  603 F.3d 1262 (Fed. Cir. 2010) ......................................................53

*Burton v. Stevedoring Servs. of Am.*,
  196 F.3d 1070 (9th Cir. 1999) ........................................................17

*Cathedral Candle Co. v. ITC*,
  400 F.3d 1352 (Fed. Cir. 2002) ................................................43, 47

*Certain Video Game Sys., In re,*
   Inv. No. 337-TA-770, 2012 WL 4480570 (Aug. 31, 2012),
   *aff'd in relevant part*, 2012 WL 6936114 (ITC Nov. 6, 2012) ........................51

*Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.,*
   467 U.S. 837 (1984) ...................................... 2, 10, 34, 35, 36, 37, 39, 40, 42, 46

*Christensen v. Harris Cnty.,*
   529 U.S. 576 (2000) ..........................................................................35, 36, 43

*Clark Blade & Razor Co. v. Gillette Safety Razor Co.,*
   194 F. 421 (3d Cir. 1912) ................................................................29

*Conn. Nat'l Bank v. Germain,*
   503 U.S. 249 (1992) .............................................................................14

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
   447 U.S. 102 (1980) .............................................................................32

*Cooper Techs. Co. v. Dudas,*
   536 F.3d 1330 (Fed. Cir. 2008) ........................................................36

*Corley v. United States,*
   556 U.S. 303 (2009) .............................................................................23

*Daewoo Elecs. Co. v. AFL-CIO,*
   6 F.3d 1511 (Fed. Cir. 1993) ...........................................................33

*Diamond v. Chakrabarty,*
   447 U.S. 303 (1980) .............................................................................23

*Director, Office of Workers' Compensation Programs v. Sun Ship, Inc.,*
   150 F.3d 288 (3d Cir. 1998) ......................................................16, 21

*Donaldson Co., In re,*
   16 F.3d 1189 (Fed. Cir. 1994) (en banc) ...........................................32

*D2L Ltd. v. Blackboard, Inc.,*
   671 F. Supp. 2d 768 (D. Md. 2009) ..................................................20

*Encore Wire Corp. v. Southwire Co.,*
   No. 10-cv-86, 2011 WL 833220 (N.D. Ga. Mar. 4, 2011) ...............20

*Encyclopaedia Britannica, Inc. v. Alpine Elecs of Am., Inc.*,
  609 F.3d 1345 (Fed. Cir. 2010) ...........................................34, 49, 51

*Energy E. Corp. v. United States*,
  645 F.3d 1358 (Fed. Cir. 2011) ........................................................15

*Ethicon, Inc. v. Quigg*,
  849 F.2d 1422 (Fed. Cir. 1988) ......................................................40

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
  935 F.2d 1263 (Fed. Cir. 1991) ......................................................23

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) .................................................................39, 42

*FDIC v. Philadelphia Gear Corp.*,
  476 U.S. 426 (1986) ........................................................................33

*Febrey, In re*,
  135 F.2d 751 (C.C.P.A. 1943) ........................................................29

*Fed. Exp. Corp. v. Holowecki*,
  552 U.S. 389 (2008) ........................................................................47

*Godfrey v. Eames*,
  68 U.S. 317 (1863) ...............................................1, 9, 24, 25, 26, 29

*Gonzales v. Oregon*,
  546 U.S. 243 (2006) .................................................................42, 43

*Harder v. Hayward*,
  150 F.2d 256 (C.C.P.A. 1945) ........................................................29

*Henriksen, In re*,
  399 F.2d 253 (C.C.P.A. 1968) ........................................................30

*Hertz Corp. v. Enterprise Rent-a-Car Co.*,
  557 F. Supp. 2d 185 (D. Mass. 2008) ............................................20

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
  900 F.2d 384 (D.C. Cir. 1990) ........................................................17

*Jaskolski v. Daniels,*
  427 F.3d 456 (7th Cir. 2005) ..........................................................17

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,*
  534 U.S. 124 (2001) ........................................................................33

*Kasten v. Saint-Gobain Performance Plastics Corp.,*
  131 S. Ct. 1325 (2011) ....................................................................45

*Kimble v. Marvel Entm't, LLC,*
  135 S. Ct. 2401 (2015) ................................................................33, 48

*Ky. Ret. Sys. v. EEOC,*
  554 U.S. 135 (2008) ........................................................................42

*Lacavera v. Dudas,*
  441 F.3d 1380 (Fed. Cir. 2006) ......................................................39

*Longi, In re,*
  759 F.2d 887 (Fed. Cir. 1985) ........................................................40

*Merch. Techs., Inc. v. Telefonix, Inc.,*
  No. 05-CV-1195-BR, 2007 WL 464710 (D. Or. Feb. 7, 2007) .......51

*Merck & Co. v. Kessler,*
  80 F.3d 1543 (Fed. Cir.1996) .........................................................37

*Microsoft Corp. v. i4i Ltd. P'ship,*
  131 S. Ct. 2238 (2011), ..................................................................33

*MOAEC, Inc. v. MusicIP Corp.,*
  568 F. Supp. 2d 978 (W.D. Wis. 2008) ...........................................49

*MOAEC, Inc. v. Pandora Media, Inc.,*
  607 F. Supp. 2d 980 (W.D. Wis. 2009),
  *appeal dismissed*, 363 F. App'x 739 (Fed. Cir. 2009) .....................51

*Perez v. Mortgage Bankers Ass'n,*
  135 S. Ct. 1199 (2015) ....................................................................43

*PhotoCure ASA v. Kappos,*
  603 F.3d 1372 (Fed. Cir. 2010) ......................................................46

*Portola Packaging, Inc., In re*,
  110 F.3d 786 (Fed. Cir. 1997) ......................................................... 40

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ................................................. 52, 55

*Public Citizen, Inc. v. HHS*,
  332 F.3d 654 (D.C. Cir. 2003) ......................................................... 35

*Regents of Univ. of N.M. v. Knight*,
  321 F.3d 1111 (Fed. Cir. 2003) ...................................................... 35

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ........................................................ 52

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ........................................................................ 14

*Roman v. CIA*,
  297 F.3d 1363 (Fed. Cir. 2002) ...................................................... 35

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ............................................... 2, 10, 43, 45, 46

*Smith v. Goodyear Dental Vulcanite Co.*,
  93 U.S. 486 (1876) .......................................................................... 29

*Stark v. Advanced Magnetics, Inc.*,
  119 F.3d 1551 (Fed. Cir. 1997) ...................................................... 53

*Stevens v. Tamai*,
  366 F.3d 1325 (Fed. Cir. 2004) ...................................................... 38

*Sursely v. Peake*,
  551 F.3d 1351 (Fed. Cir. 2009) ...................................................... 43

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) ...................................................... 55

*Tex. Dep't of Housing & Community Affairs v. Inclusive Communities
  Project, Inc.*, 135 S. Ct. 2507 (2015) ............................................ 33

*Transco Prod., Inc. v. Performance Contracting, Inc.*,
 38 F.3d 551 (Fed. Cir. 1994) ...........................................................31

*Ultratec, Inc. v. CaptionCall, LLC*,
 611 F. App'x 720 (Fed. Cir. 2015) ..................................................51

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
 45 F. Supp. 3d 881 (W.D. Wis. 2014) .............................................49

*United States v. Locke*,
 471 U.S. 84 (1985) ...................................... 1, 10, 15, 16, 17, 21, 23, 31, 40, 46

*United States v. Mead Corp.*,
 533 U.S. 218 (2001) ...............................................................35, 36

*Util. Air Regulatory Grp. v. EPA*,
 134 S. Ct. 2427 (2014) ..................................................................41

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
 520 U.S. 17 (1997) .......................................................................49

*Wyeth v. Kappos*,
 591 F.3d 1364 (Fed. Cir. 2010) .....................................................46

*Young v. United Parcel Serv., Inc.*,
 135 S. Ct. 1338 (2015) ..................................................................44

*Ziherl, Ex Parte*,
 116 U.S.P.Q. 162 (PTO Bd. App. 1958) .........................................28

## Statutes and Regulations                                                   Pages

R.S. § 4897 .....................................................................................29

35 U.S.C. § 2(b)(2)(A) .............................................................37, 39

35 U.S.C. § 2(b)(2)(D) ...................................................................39

35 U.S.C. § 21(a) ...........................................................7, 19, 27, 38

35 U.S.C. § 41(b)(2) .......................................................................14

35 U.S.C. § 101 .............................................................................37

35 U.S.C. § 102 .................................................................................37

35 U.S.C. § 102(b) ...............................................3, 6, 7, 38, 52

35 U.S.C. § 103 .................................................................................37

35 U.S.C. § 111(a)(4) ......................................................................18

35 U.S.C. § 112 .................................................................................37

35 U.S.C. § 120 ...................................................................1, *passim*

35 U.S.C. § 151 ...................................................................................4

35 U.S.C. § 154(a)(2) ................................................................19, 24

35 U.S.C. § 321(c) ...........................................................................14

35 U.S.C. § 372(b)(3) ......................................................................39

37 C.F.R. § 1.6(a)(4) ........................................................................27

37 C.F.R. § 1.10(a)(1) ................................................................7, 27

37 C.F.R. § 1.138 .............................................................................27

37 C.F.R. § 1.138(d) ........................................................................46

37 C.F.R. § 1.78(d) .............................................4, 10, 36, 37, 41, 42

**Other Authorities**         **Pages**

MPEP Foreword (9th ed. 2014) .....................................................35

MPEP § 201.11 (2d ed. 1953) ........................................................44

MPEP § 201.11 (3d ed. 1961) ........................................................45

MPEP § 201.11 (8th ed. 2001) ................................................34, 48

MPEP § 203.04 (2d ed. 1953) ........................................................45

MPEP § 211.01(b)(I) (9th ed. 2014) ......................................34, 48

MPEP § 1309 (8th ed. 2001 & 9th ed. 2014) ............................................................4

MPEP § 711.01 (8th ed. 2001 & 9th ed. 2014) ......................................................27

MPEP § 711.01(III) (9th ed. 2014) ....................................................... 46

MPEP § 711.02(c) (3d ed. 1961) ............................................................45

Staff's Response to Respondents' Motion to Summary Determination
    Regarding Priority Dates, *In re Certain Video Game Sys.*,
    No. 337-TA-770, 2011 WL 7092316 (Dec. 22, 2011) ......................................49

## TABLE OF ABBREVIATIONS AND CONVENTIONS

| | |
|---|---|
| A____ | joint appendix page ____ |
| HTC | the HTC defendants–appellees collectively |
| Immersion | plaintiff–appellant Immersion Corporation |
| MPEP | Manual of Patent Examining Procedure |
| patents on appeal | U.S. Patent Nos. 7,982,720; 8,031,181; and 8,059,105 |
| PTO | U.S. Patent and Trademark Office |
| '846 patent | U.S. Patent No. 6,429,846, issued on August 6, 2002 based on an application filed on January 19, 2000 |
| '940 application | U.S. Patent Application No. 10/213,940, filed on August 6, 2002 (called the '875 application in Immersion's brief because it eventually produced U.S. Patent No. 7,148,875) |

## RELATED CASES

No other appeals in or from the same civil action have previously been before this or any other appellate court.  Appellees and their counsel are not aware of any other cases pending in this or any other court that will directly affect or be directly affected by the decision in this case.

## INTRODUCTION

Under 35 U.S.C. § 120, a continuation application may receive the benefit of the filing date of a patented parent application only if it is filed "before the patenting" of the parent application. "Before" a statutory deadline means *before* that date, not *on or before* that date. The Supreme Court so held in *United States v. Locke*, 471 U.S. 84 (1985), and every circuit to consider similar issues since then has agreed. The same rule applies here.

Immersion's brief ignores this settled law and strains to create ambiguity where none exists. According to Immersion, it is impossible to know exactly when filing and patenting occur, so the PTO may declare which occurred first by administrative fiat. But under the Patent Act, the timing of both filing and patenting is assessed by date, not by the hour or minute. Here, Immersion's '846 patent issued on August 6, 2002, and it filed its follow-on application on the same day. As a matter of law, *on* August 6, 2002 was not "before" August 6, 2002.

Immersion's reinterpretations of history and pleas for deference to the PTO's unofficial interpretation in the MPEP are unavailing. Immersion cites *Godfrey v. Eames*, 68 U.S. 317 (1863), but *Godfrey* addressed a different scenario. The Patent Office had no settled rule or policy before the Patent Act of 1952, and the MPEP did not equate "before" with "on or before" and "not later than" until nine years later, in 1961. Congress has not endorsed that misinterpretation since

then, and no judicial consensus has developed because the issue arises only rarely. Immersion invokes *Chevron*, *Auer*, and *Skidmore*, but none of those doctrines warrants deference to the PTO's refusal to follow the plain language of the statute.

Contrary to the suggestions of Immersion and its *amici*, the invalidity of Immersion's patents was not an unfair "chronological happenstance of events outside [Immersion's] control." Immersion knew in advance that the '846 patent would issue on August 6, 2002 but nonetheless elected not to file a continuation application patent before August 6, 2002. Immersion also knew that a foreign counterpart application disclosing the claimed subject matter had been published more than a year earlier. Because Immersion filed its follow-on application on the same day that the '846 patent issued rather than "before" the patent issued, the district court correctly ruled that Immersion's later patents were not entitled to a filing date before August 6, 2002 and accordingly were invalid for anticipation.

Immersion's claim of procedural irregularity is equally unfounded. HTC undisputedly made a *prima facie* showing of anticipation. As a matter of law, the burden shifted to Immersion to produce evidence that its patents were entitled to a filing date under which the foreign application was not prior art. But Immersion failed to carry that burden: it presented no evidence whatsoever that it filed its follow-on application before the patenting of the '846 patent. That failure entitled HTC to summary judgment, and this Court should affirm that judgment.

– 2 –

**STATEMENT OF ISSUES**

1.      Section 120 of the Patent Act allows a continuation application to receive the benefit of the filing date of an issued parent patent only if the continuation application is "filed before the patenting" of the parent application.  The Supreme Court and several circuits have held that "before" a statutory deadline means "before" that date, not "on or before."  Was the district court correct in ruling that Immersion's August 6, 2002 filing of its follow-on application did not occur "before" the August 6, 2002 patenting of its '846 patent?

2.      HTC presented a *prima facie* case of invalidity by showing that Immersion's July 2001 foreign application was published more than a year before Immersion applied for the patents on appeal and that that publication disclosed all elements of the asserted claims.  Under settled law, the burden shifted to Immersion to produce evidence of an effective filing date before the Section 102(b) bar date.  Immersion produced no evidence that it was entitled to an earlier filing date.  Did the district court correctly grant summary judgment of invalidity?

**STATEMENT OF THE CASE**

Patent applicants often file chains of continuation applications in an effort to have the filing date of the earliest application extend to claims presented in later applications.  Section 120 of the Patent Act permits this, but only if the applicant complies with certain conditions.  In particular, a continuation application may

receive the filing date of its parent only if it is filed "before the patenting or aban-donment of or termination of proceedings on the [parent] application." 35 U.S.C. § 120. In other words, a later-filed application may claim the benefit of the filing date of an earlier application only if the two applications were "copending." 37 C.F.R. § 1.78(d).

Applicants receive advance notice of when a patent on a parent application will issue and have ample time to file a continuation application before patenting of the parent application. When the PTO determines that the claims are patentable, it issues a notice of allowance, after which the applicant has three months to pay the issue fee. 35 U.S.C. § 151. About ten days before the patent issues, the PTO sends the applicant an "issue notification" indicating the number the new patent will bear and the date it will issue. *See* MPEP § 1309 (8th ed. 2001 & 9th ed. 2014).[1] With such notice, an applicant can make sure to file a continuation appli-cation before the patent issues.

Here, Immersion chose not to file a continuation application before the patenting of the application on which it relies for priority. Instead, Immersion waited until the day the patent issued—while that patent was in force—to file its follow-on application. The district court ruled that this delay broke the chain of

---

[1] The Eighth Edition of the MPEP was in effect in August 2002, when the events critical to this appeal took place. The Ninth Edition is the current edition.

priority and prevented that application and later continuations from claiming the benefit of the filing date of the issued patent.  As a result, it held that the patents at issue here were anticipated by a foreign counterpart application that was published more than a year before their priority date.

**A.    Immersion's chain of patent applications and its failure to file the '940 follow-on application before the '846 patent issued**

A family tree illustrates the history of Immersion's patent applications:



At the top is Immersion's '846 patent, which issued on August 6, 2002 based on an application filed on January 19, 2000. *See* A136. To the side is Immersion's foreign counterpart application, which disclosed the same subject matter. *See* A503-34. Because that application was published on July 26, 2001, A503, any patent in the family whose effective filing date was after July 26, 2002 was invalid under the one-year bar of 35 U.S.C. § 102(b). Below the '846 patent is a series of applications with similar specifications culminating in the three patents on appeal (in blue at the bottom). All those applications were filed after the bar date of July 26, 2002. *See* A67; A46; A23. The parties thus agree that the validity of the patents on appeal turns on whether the descendants of the '846 patent were entitled to claim the benefit of the '846 patent's January 2000 filing date.

Immersion also does not dispute that instead of filing a continuation of the application that yielded the '846 patent on any date before the '846 patent issued, it chose to file its follow-on application on the date the '846 patent issued. The PTO issued a notice that it was allowing the application that became the '846 patent on April 19, 2002. A488. Immersion paid the issue fee a few weeks later. A492. On July 18, 2002, the PTO sent an Issue Notification advising that the '846 patent would issue on August 6, 2002. A496. Despite that notice, Immersion elected not to file a continuation application before August 6, 2002. Instead, it waited and filed its follow-on application (the '940 application) on August 6, 2002, the same

– 6 –

day that the '846 patent issued.  A498.  More precisely, Immersion express-mailed the '940 application to the PTO on August 6, 2002, and by rule that application was treated as filed when deposited with the Postal Service rather than when the PTO received it.  *See* 35 U.S.C. § 21(a); 37 C.F.R. § 1.10(a)(1).[2]

### B.   The district court's summary judgment that the patents on appeal were not entitled to the filing date of the '846 patent and thus were invalid for anticipation

In 2012, Immersion sued HTC for infringement of various patents, including the three now on appeal.  HTC moved for partial summary judgment that the patents on appeal were anticipated by Immersion's July 2001 foreign counterpart application.  In particular, HTC contended that the patents on appeal were not entitled to the January 2000 filing date of the '846 patent because Immersion filed its '940 application on the same day that the '846 patent issued, rather than "before" the patenting of the '846 patent as required to receive the benefit of an earlier priority date.  A396-99.  As a result, HTC contended, the patents were entitled only to the August 6, 2002 filing date of the '940 application and were invalid under 35 U.S.C. § 102(b) because Immersion's published foreign application had disclosed the claimed subject matter more than a year earlier.  A399.

---

[2] The '940 application discussed in this brief is the same as the "'875 application" discussed in Immersion's brief.  Immersion calls the '940 application the "'875 application" because it eventually culminated in the '875 patent.

The district court granted HTC's motion. A4-8. The court noted that Immersion bore the burden of producing evidence of an earlier priority date than its actual application dates and observed that Immersion had failed to produce any evidence that it filed the '940 continuation application before the parent '846 patent issued. A7. Because Immersion's foreign counterpart application was published more than a year before August 6, 2002 and included an identical specification teaching every limitation of the patents, the court ruled that it anticipated all three patents. A8. Immersion moved for reargument, but the court reiterated that "once an alleged infringer presents evidence of anticipatory prior art, the burden of going forward shifts to the patentee to produce some evidence that the patent is entitled to an earlier priority date" and that Immersion had not come forward with any evidence that it had filed its '940 application before the '846 patent issued. A20.

The case proceeded as to the two remaining patents-in-suit, but the parties resolved those issues in a settlement reserving Immersion's right to appeal the invalidity ruling. The district court entered a stipulated final judgment declaring the patents now on appeal invalid and dismissing all claims and defenses as to the other patents with prejudice. A22. This appeal followed.[3]

---

[3] The settlement agreement provides that HTC must make an additional pay-

(footnote continued on next page)

**SUMMARY OF ARGUMENT**

1.  Section 120 provides that a second application is entitled to the benefit of a first application's filing date only if it is filed "before" the patenting of the first application.  The Supreme Court and other circuits have consistently held that "before" a statutory deadline means "before" that deadline, not "on or before" or "not later than" the deadline.  Immersion ignores this law and instead invents ambiguities regarding the precise moment at which "filing" and "patenting" occur.  Those efforts are red herrings because both filing and patenting are timed by the day, not by the hour or minute.  Because patents are in force on their entire day of issuance, a follow-on application filed on the same day a patent issues has not been filed "before the patenting" and does not receive the benefit of the issued patent's filing date.  Immersion tries to recast the issue as one of "copendency," but semantics cannot change the result:  applications can be "copending" only if one is filed *before* the other has issued as a patent.

Immersion's assertion that the district court's ruling defies 150 years of settled law and practice is revisionist history.  The Supreme Court's decision in *Godfrey v. Eames* dealt with a different issue:  whether an applicant may preserve

---

ment for a license to the appealed patents if the invalidity ruling is overturned on appeal.  The amount is confidential, but it is substantial and proportional to the amount that HTC has paid to license the other two patents.  The parties thus continue to have a real and live dispute over the validity of the appealed patents.

the priority date of a parent application when it simultaneously files a continuation application and petitions to *withdraw* the parent application.  Nor was there a settled administrative practice of allowing applicants to obtain the filing date of a parent application by filing a follow-on application on the same date that the parent patent issued.  Indeed, both PTO practice and a statute forbade that practice at one time.  Section 120 did not codify any settled practice, and Congress could not have "ratified" by silence an obscure administrative practice of which it was unaware.

2.  Immersion's plea for deference to the MPEP's misreading of Section 120 should be rejected.  *Chevron* deference does not apply because the MPEP is merely a non-binding agency manual, not a rule or regulation adopted by notice-and-comment procedures.  Moreover, the PTO lacks authority to issue regulations that interpret substantive patent law, and this aspect of Section 120 is substantive because it determines the scope of prior art that may invalidate patent claims.  In any event, the statute is neither silent nor ambiguous:  as in *Locke*, "before" has "obviously different substantive content" from "on or before."

*Auer* deference to agencies' interpretations of their own regulations does not apply because (a) the PTO has no substantive authority to regulate here, (b) the PTO did not fill any statutory void, and (c) 37 C.F.R. § 1.78(d) merely rephrases the "before the patenting" requirement of Section 120.  At most, Immersion may invoke *Skidmore* deference, but such deference applies only when an agency inter-

prets ambiguous statutory dictates and only to the extent its interpretation is persuasive. Here the statute is not ambiguous, and the MPEP's *ipse dixit* is unpersuasive. The language of the original, 1953 version of the MPEP was faithful to Section 120, and the 1961 amendment was expressly based on a legally erroneous equation of "before" with "on or before" and "not later than." In other contexts, the PTO properly reads "before" to mean "before."

3. Reliance interests do not justify perpetuating the MPEP's error. The very MPEP section on which Immersion relies cautions applicants against waiting to file continuation applications. Moreover, the MPEP itself warns that it is not binding law, and there is no judicial consensus as only two district judges have addressed the issue in 63 years. Ultimately, Immersion has only itself to blame for its lack of caution and failure to heed the statute.

Contrary to the suggestions of Immersion's *amici*, adherence to the statute will not doom many thousands of patents. Patents will be invalidated only in rare cases where (a) despite notices of both allowance and issue date, the patentee delayed filing its follow-on application until the day the parent patent issued; (b) the second application led to an issued patent; (c) the owner paid maintenance fees to keep the patent in force; (d) the patent was valuable enough to be asserted; (e) intervening prior art invalidated the claims; *and* (f) the claims would not have been invalid, not infringed, or unenforceable for other reasons.

4. The summary judgment was both substantively and procedurally proper. HTC presented a *prima facie* case of invalidity by showing that Immersion's foreign application with the same disclosures was published in July 2001. The burden thus shifted to Immersion to produce evidence of an earlier effective filing date preventing that application from qualifying as prior art. To carry that burden, Immersion had to present evidence that its '940 application was filed before the patenting of the '846 patent, but it did failed to do so. Nothing on the face of the patents suggests that the examiner considered the relative priority of Immersion's foreign and '940 applications. In any event, there was no genuine issue of material fact: the '940 application was mailed *on* August 6, 2002, not *before* August 6, 2002. And that undisputed fact compelled summary judgment of invalidity.

### ARGUMENT

**A. The patents on appeal were not entitled to the filing date of the '846 patent because Immersion did not file its '940 application "before" the '846 patent issued, as 35 U.S.C. § 120 requires**

Under 35 U.S.C. § 120, a later patent application may claim the benefit of the filing date of an earlier application with a similar specification only under certain conditions. One condition is that the later application must have been filed "before the patenting or abandonment of or termination of proceedings on the first application." As in effect in 2002, Section 120 provided (with emphasis added):

> An application for patent for an invention disclosed in the
> manner provided by the first paragraph of section 112 of

this title in an application previously filed in the United States … which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, *if filed before the patenting or abandonment of or termination of proceedings on the first application* or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.  …

Section 120 permits applicants to file chains of continuation applications, but each continuation must be filed *before* the patenting or other final disposition of its parent application to receive the benefit of the filing date of an earlier application.  Failure to file a continuation application while a parent application remains pending breaks the chain.  This does not automatically invalidate the claims, but it does mean that the priority date of any follow-on application (and continuations of that application) will be the follow-on application's own filing date, which may render the claims invalid over prior art.

That is what happened here.  The patents on appeal all claim priority to the '846 patent through a chain of continuation applications.  But Immersion's '940 application was not filed *before* the patenting of the '846 patent.  Instead, it was filed *on the same day* that the '846 patent issued.  This broke the chain of priority because, as a matter of law, filing an application on the day of patenting does not constitute filing the application *before* that patenting.  Immersion argues that filing another application "on or before" the date of patenting counts as filing

– 13 –

it "before" patenting, but the Supreme Court and every circuit to address similar statutory deadlines have held that "before" means "before," not "on or before."

> **1.    As the Supreme Court and every circuit to consider the issue have held, "before" means "before," not "on or before" or "not later than"**

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "In patent law, as in all statutory construction," "words will be interpreted as taking their ordinary, contemporary, common meaning" unless otherwise defined in the statute. *Bilski v. Kappos*, 561 U.S. 593, 603 (2010). "When the words of a statute are unambiguous … this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).

That is the case here. Section 120 requires that continuations be filed "before" the patenting of the parent application in order to gain the filing date of the parent application. Other sections of the Patent Act require that filings be made "on or before" or "not later than" a certain date. *See, e.g.*, 35 U.S.C. § 41(b)(2) (fee must be received "on or before the date the fee is due"); 35 U.S.C. § 321(c) (petition must be filed "not later than the date that is 9 months after" patent is granted). But Section 120 requires filing a continuation application "before" the patenting of the parent application, not "on or before" or "not later than" that date. Indeed,

– 14 –

Immersion admits (at 25) that "as other provisions of the Patent Act make clear, where Congress wants to refer to something occurring on or before a day or date, it does so expressly." Congress thus knew the difference between "before" and "on or before" or "not later than," yet it chose to require filing of continuation applications "before" patenting of parent applications. And "[t]his court cannot simply add phrases or words that do not appear in the statute." *Energy E. Corp. v. United States*, 645 F.3d 1358, 1362 (Fed. Cir. 2011).

Filing deadlines in other areas of law also use the word "before," and the Supreme Court and every circuit to consider such filing deadlines have held that the plain meaning of a requirement to file "before" a deadline requires filing *before* that deadline, not *on or before* it.

The leading case is *United States v. Locke*, 471 U.S. 84 (1985), where the Supreme Court held that a filing of mining claim documents *on* December 31 did not satisfy a statutory deadline to file such documents "prior to December 31." *Id.* at 93-94. In rejecting Locke's assertion that "prior to" meant "on or before," the Court stressed that "with respect to filing deadlines a literal reading of Congress' words is generally the only proper reading of those words." *Id.* at 95. The Judiciary, the Court held, is not "licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result." *Id.* "'[D]eadlines are inherently arbitrary,'" the Court noted, *id.* at 94, and "regard-

less of where the cutoff line is set, some individuals will always fall just on the other side of it," *id.* at 101. "Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced." *Id.* Thus, "[a] filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day." *Id.* Although *Locke* interpreted the phrase "prior to," the Supreme Court expressly equated "prior to" with "before" and recognized that both terms have "obviously different substantive content" from the phrase "on or before." *Id.* at 96 n.11.

The Third Circuit reached the same conclusion in *Director, Office of Workers' Compensation Programs v. Sun Ship, Inc.*, 150 F.3d 288 (1998), holding that Congress's use of "before" in a statutory deadline "plainly meant that action had to be undertaken before that date and not on it." *Id.* at 292. The statute in *Sun Ship* provided that benefits decisions would become final and appealable if the Benefits Review Board did not act to review an ALJ decision "before September 12, 1996." *Id.* at 291. In that case, the Board acted *on* September 12, 1996, but the court of appeals held that the Board's decision was ineffective because it was not issued *before* September 12, 1996. The court observed that it was "difficult to imagine how Congress could have more clearly established [a] deadline for acting" than by requiring the Board to act "before" September 12. *Id.* at 292.

Other circuits have agreed that to file "before" a deadline requires filing *prior to* that deadline, not *on* that date. *See, e.g.*, *Burton v. Stevedoring Servs. of Am.*, 196 F.3d 1070, 1074 (9th Cir. 1999) ("We do not think that laypersons, literati, or linguists would have difficulty deciding that 'before' means 'prior to' rather than 'on.' Nor should legists."); *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 900 F.2d 384, 386 (D.C. Cir. 1990) ("while before *Locke* one might argue that 'prior to' a particular day might encompass filings 'prior to the end' of that day, *Locke* bars such a reading").

Here, Section 120 requires a continuation application to be filed "before" the patenting of its parent application in order to gain the parent application's filing date. Because "before" means "before," not "on or before," Immersion needed to file the '940 continuation before the '846 patent issued in order to comply with Section 120. And because the '846 patent issued on August 6, 2002 and was in force that entire day, Immersion needed to file its continuation before August 6, 2002 to enjoy the benefit of an earlier filing date. Filing *on* August 6, 2002, was too late. That outcome may be painful for Immersion, but such pain is "just a normal effect of any rule; no matter where the line may be placed, someone always files one day too late." *Jaskolski v. Daniels*, 427 F.3d 456, 463 (7th Cir. 2005).

### 2.    Immersion's efforts to create an ambiguity are unavailing

Immersion ignores this settled law but does concede (at 21) that "before" means "preceding in time, or earlier than." Immersion also appears to recognize that August 6, 2002 did not "precede in time" or come "earlier than" August 6, 2002. Those concessions are enough to resolve this case, but Immersion strains to create ambiguities. Specifically, it argues (at 21) that "the pertinent question is *what* must come 'before' *what*" and that "the Patent Act is silent on the question of when precisely a patent application can be understood to have been 'filed' or when precisely 'the patenting' takes place." But there is no material ambiguity as to either one. "Filing" and "patenting" are both determined at date-level granularity; the Patent Act makes clear on what day each occurs; and determining whether the "filing" of a continuation occurred "before" a parent application was "patented" is accordingly straightforward.

a.    Under the Patent Act, filings occur on particular days, not at particular times of day. Section 120 recites that under certain circumstances, a later application may have the same effect "as though filed on the *date* of the prior application." 35 U.S.C. § 120 (emphasis added). A "date" refers to an entire day, not a time of day. Although this particular language refers to the time the prior (parent) application was filed, the statute does not suggest that the timing of continuation filings is calculated more granularly. Moreover, under 35 U.S.C. § 111(a)(4), all

– 18 –

applications are given a filing *date*, namely "the *date* on which the specification and any required drawing are received in the Patent and Trademark Office" (emphasis added). *See also* 35 U.S.C. § 21(a) (granting PTO authority to deem any paper filed "on the date" it is deposited with the Postal Service). Nothing in the Patent Act suggests that the timing of application filings should be measured more finely. The PTO has never kept track or required applicants to keep track of the hour, minute, or second of such filings. And the "related application data" on the covers of U.S. patents recite *dates* of such filings, not hours, minutes, or seconds.

"Patenting" is likewise calculated at date-level granularity. Under 35 U.S.C. § 154(a)(2), the patent grant is

> for a term beginning on the *date* on which the patent issues and ending 20 years from the *date* on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c), from the *date* on which the earliest such application was filed.

(Emphasis added.) The cover of each patent accordingly lists its "[d]ate" of issuance, the PTO informs applicants of the *date* of upcoming issuance, and everyone evaluates whether a patent is in force at a date level. If a patent goes into force on a given date, the patentee is entitled to sue on that patent at any time on that day and claim damages for that entire day. Indeed, parties often file patent suits just after the stroke of midnight on the day the patent is issued. *See*, *e.g.*, *Abbott Labs.*

– 19 –

*v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 556 (D. Del. 2007) ("The PTO issued the '3286 patent on May 29, 2007.  At 12:02 a.m. that morning, J & J filed an infringement action."), *aff'd*, 297 F. App'x 966 (Fed. Cir. 2008); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 774 n.3 (D. Md. 2009) (declaratory judgment complaint filed at 12:01 a.m. on day of issuance properly filed after the patent issued); *Hertz Corp. v. Enterprise Rent-a-Car Co.*, 557 F. Supp. 2d 185, 188 & n.2 (D. Mass. 2008) (permitting complaint filed at "the stroke of midnight" on the day the patent-in-suit issued); *Encore Wire Corp. v. Southwire Co.*, No. 10-cv-86, 2011 WL 833220 (N.D. Ga. Mar. 4, 2011) (complaints filed at 12:07 a.m. EDT and 12:10 a.m. CDT).  HTC is unaware of any authority requiring an infringement claim to be filed at a later time on the day of issuance.

Immersion does not suggest that patenting occurs only at the *end* of the day of patenting, and rightly so.  If patents were not in effect during the day of issuance, patentees could not sue for infringement on that day and could not claim damages for infringement on that day—which would come as a surprise to most patentees.  Indeed, Immersion itself contended in this case that "Damages for HTC's Infringement of the '181 Patent Begin on the Date It Issued."  A2059.  Nor can Immersion plausibly distinguish "patenting" from "issuance," as "patenting" plainly refers to actual issuance of a patent, not a predicate event such as a notice of allowance or a confirmation such as publication in the *Official Gazette*.

b.     Contrary to Immersion's suggestion, the date-level granularity of the statute does not create any ambiguity; rather, it dooms Immersion's case. Because both "filing" and "patenting" are calculated at the date level, whether a filing comes "before" a patenting must also be determined at the date level. Immersion argues that even though "filing" and "patenting" are calculated at the date level, the PTO may deem a continuation filed on the same day as the patenting of its parent as having been filed at some arbitrary time "before" that patenting. But that argument contradicts *Locke* and the many circuit cases discussed above. If a statute requires a filing "before" or "prior to" a certain day, a filing *on* that day is not timely. Just as a filing *on* December 31 does not qualify as a filing "prior to December 31" (*Locke*) and a decision *on* September 12, 1996 does not qualify as a decision "before September 12, 1996" (*Sun Ship*), the August 6, 2002 filing date of Immersion's '940 application was not "before" the August 6, 2002 patenting of the '846 patent. The PTO has no discretion to dictate otherwise because, as a matter of law, a filing *on* a given date is not a filing *before* that date.

Throughout its brief, Immersion tries to sidestep the settled meaning of "before" by saying Section 120 imposes a "copendency" requirement. But such semantics cannot change the result. By definition, when an application is "pending," it has been filed but not issued. When a parent patent issues, the application for that patent is no longer pending. Because the '846 patent was in effect for the

entire day of August 6, 2002, the application for that patent was not pending at any time on August 6, 2002. And because Immersion's '940 application was not filed until August 6, 2002, that application never "copended" with a parent application.

Immersion argues (at 23) that when both the filing of an application and the issuance of a patent "occur on the same day, the determination of which of the two comes first cannot be made simply by clicking one stopwatch when the application is 'filed' and another at 'the patenting,' and then comparing the two times." That is correct, but the reason is that the timing of the events is determined not with a stopwatch but with a calendar. When both events occur on the same day, neither can come "before" the other.

In any event, if relative timing or "copendency" were judged based on the precise moments of filing and patenting, there would be no need for an arbitrary administrative determination in this case because Immersion necessarily filed its '940 application *after* the patenting of the '846 patent. As discussed above, patents are in force during the entire day of their issuance, from the stroke of midnight in the Eastern time zone. To be filed "before" then, a continuation must be filed before midnight Eastern time, which means on the previous day. But the prosecuting attorney who mailed the '940 application on August 6, 2002, A498, was located in San Francisco, in the Pacific time zone. A501. Even assuming Immersion's counsel mailed the '940 application at the earliest possible moment to

obtain an August 6, 2002 postmark, midnight Pacific time is 3:00 a.m. Eastern time. Thus, even by the wildest stretch of the imagination, Immersion could not have filed its continuation application before the '846 patent went into effect.

c.     Immersion argues (at 25) that "the district court's interpretation effectively requires all continuations to be filed the day before issuance of the parent patent" and then, citing *Corley v. United States*, 556 U.S. 303, 315 (2009), asserts that "the short answer is that Congress did not write the statute that way." But Section 120 expressly requires that continuations be filed "before" patenting of the parent patent, and both *Locke* and ordinary English make clear that a filing *on* a given date does not qualify as a filing "before" that date. The short answer to Immersion's argument is that Congress *did* write the statute that way.

Immersion's reliance on *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980), is similarly misplaced. *Chakrabarty* did caution against reading in limitations and conditions not expressed by Congress, but Congress expressly included a timing limitation in Section 120. And as *Locke* holds, courts are equally forbidden from ignoring timing requirements when Congress *has* expressed them in statutes.[4]

---

[4] Immersion also invokes (at 23) Judge Newman's concurrence in *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263 (Fed. Cir. 1991). But that opinion merely noted that Sections 153 and 154 of the Patent Act set no deadlines for placing the Commissioner's signature on a patent and annexing a copy of the specification and drawings. *Id.* at 1269-70. Here, Section 120 expressly imposes a

(footnote continued on next page)

### 3.   The Supreme Court's decision in *Godfrey v. Eames* did not address the priority issue in this case

Immersion suggests (at 3) that "[f]or more than 150 years, the law has been that a continuation application satisfies th[e] copendency requirement when filed the same day the parent patent issues."  Immersion similarly asserts (at 27) that "[b]efore Section 120, case law permitted inventors to file continuation applications on the same day the parent application was abandoned or patented."  But those claims rest on *Godfrey v. Eames*, 68 U.S. 317 (1863), and *Godfrey* involved an earlier application that had been neither patented nor abandoned when the second application was filed.

*Godfrey* involved a patent on boot trees.  After the Commissioner rejected Godfrey's first application, Godfrey simultaneously submitted two sets of papers, one requesting to withdraw the rejected original application and one presenting a new application.  The Patent Office accepted the second application in lieu of the first and granted a patent.  But when Godfrey sued to enforce his patent, the trial court disregarded his first application and directed a verdict for the defendant on grounds that Godfrey had sold boot trees covered by his patent more than two years before he filed the second application.  *Id.* at 318-19, 324.  In the Supreme

deadline for filing continuation applications that enjoy the benefit of a parent application's filing date, and Section 154(a)(2) makes clear that patents are in effect for the entire day of their issuance.

Court, Godfrey contended that the jury should have been allowed to find that he had not abandoned his first application and that the second application was (in modern parlance) a continuation of the first. *Id.* at 320-21. The Court agreed with Godfrey that if an applicant withdraws his first application with intent to file a second application on the same invention and then proceeds to file the second application, the two applications should "be considered as parts of the same transaction, and … constituting one continuous application." *Id.* at 325-26. The Court then ordered a new trial on whether Godfrey intended to file a single continuous application or instead abandoned the original one; it did not hold that Godfrey's patent was entitled to his original filing date as a matter of law. *Id.*

*Godfrey* is inapposite here. To begin with, no patent ever issued on Godfrey's first application, so the case did not involve a further application filed on the day a parent patent issued. Moreover, although Immersion suggests that the case involved *abandonment* of the first application, it actually involved a *request to withdraw* the first application, which is distinct from abandonment. Indeed, Godfrey expressly argued that his request to withdraw the first application did *not* abandon his claim to a patent, and Eames disavowed any contention that Godfrey's withdrawal of the first application was tantamount to abandonment of the invention. *Id.* at 320, 322. For its part, the Supreme Court ordered a new trial to determine whether Godfrey intended to pursue one continuous application or had

instead abandoned his claims. *Id.* at 326. *Godfrey* did give rise to modern continuation practice, but it did not pronounce any rule on when a continuing application must be filed vis-à-vis any patenting, abandonment, or other termination of proceedings on the parent application in order to retain the priority date of the parent application. Section 120 thus could not have codified any such rule.

Even if *Godfrey* had established a rule regarding continuations and *abandoned* applications, the same logic would not extend to the scenario here, which involves the *patenting* of the prior application. When a patent issues, proceedings on the application producing it automatically terminate: a patent and the application that led to that patent cannot be copending. Yet under Immersion's interpretation, a court could treat the '846 patent as having been both a patent and an application on August 6, 2002. Furthermore, issuance of a parent patent and filing of a continuation application are discrete events that involve different actors: the PTO issues the patent and thereby terminates the parent application, whereas the applicant files the continuation application.

By contrast, when an applicant sends in papers that both submit a continuation application and request abandonment or termination of its parent application, the PTO may, consistent with *Godfrey* and Section 120, apply a rule deeming the continuation filed first and avoiding a break in the chain of continuity. That is so because an applicant's *request* to abandon or terminate proceedings on a parent

application is not an *actual* abandonment of or termination of proceedings on that application. With no statute dictating when actual abandonment or termination of an application takes effect, the PTO may treat abandonment or termination as occurring when it *acts* on the applicant's request. And the PTO has done just that. The Patent Act authorizes the PTO to deem applications filed when mailed, 35 U.S.C. § 21(a), and the PTO has adopted this practice by rule, 37 C.F.R. §§ 1.6(a)(4), 1.10(a)(1). But the PTO treats requests for abandonment differently: they are ineffective "until an appropriate official of the Office takes action there-on," including checking whether the applicant's request complies with 37 C.F.R. § 1.138 and, if so, issuing a Notice of Abandonment. MPEP § 711.01 (8th ed. 2001 & 9th ed. 2014). In such cases, although the continuation's filing may be simul-taneous with the *request* for abandonment, that filing occurs "before" the *actual* abandonment and termination of proceedings, satisfying Section 120.[5]

That logic does not apply when a parent patent issues. The PTO may still deem a continuation application filed when mailed rather than when received or reviewed. But the date of patenting is the date the patent issues, and if the follow-on application is mailed on the same day that the parent application is patented, the

---

[5] Notably, the PTO allows applicants to request that abandonment not occur until a specified date. Indeed, the MPEP suggests doing so "where a continuing application is filed with a request to abandon the prior application." MPEP § 711.01 (8th ed. 2001 & 9th ed. 2014).

follow-on application cannot have been filed "before" the patenting of its parent application.

>    **4.    There was no settled judicial interpretation or administrative practice before Section 120 was adopted, and there is no evidence that Congress shared Immersion's view before or after enactment of Section 120**

Immersion suggests that Section 120 adopted a long-settled judicial view and administrative practice of allowing applicants to retain the filing date of a parent application by filing a continuation on the day the parent patent issues.  But there was no such settled law or practice.

Indeed, in a series of cases the Patent Office ruled that an "application is *not* a continuing application and is *not* entitled to the benefit of the filing date of the prior application" if "filed after the *allowance* of a prior application."  *In re Application Filed Jul. 10, 1940*, 49 U.S.P.Q. 566 (Comm'r Pat. 1941) (emphasis added); *see also In re Application Filed Apr. 17, 1940*, 51 U.S.P.Q. 80 (Comm'r Pat. 1941); *A. v. B.*, 51 U.S.P.Q. 81 (Comm'r Pat. 1941) (same for divisionals); *Barrett v. Hart*, 1918 C.D. 62, 256 O.G. 224 (Comm'r Pat. 1918); *Ex Parte Ziherl*, 116 U.S.P.Q. 162 (PTO Bd. App. 1958) (noting the previous "practice of not permitting continuity rights of the subject matter of an application after its allowance").  Because patents do not issue until well after the examiner issues a notice of allowance, the Patent Office could not have been allowing applicants to preserve the filing date of a parent application by filing a continuation on the day the parent

application issued as a patent.  Indeed, until 1939 a statute, R.S. § 4897, limited the filing of continuation or renewal applications when the parent application had been allowed but the issue fee had not been paid for a period of time.  *See In re Febrey*, 135 F.2d 751, 753 (C.C.P.A. 1943).  Ultimately, that statute was repealed and the Court of Customs and Patent Appeals held that continuations could be filed "after allowance, but before forfeiture, of an original application."  *Harder v. Hayward*, 150 F.2d 256, 259 (1945); *Febrey*, 135 F.2d at 757.  But the later cases did not address whether follow-on applications could be filed on, rather than before, the date of patenting and still retain the parent's filing date—much less adopt a settled rule.

Immersion cites several cases (at 7) for the proposition that courts gave a second application the filing date of a first application when the filing of the second application and withdrawal of the first application occurred on the same day.  But none of those cases involved issuance of a *patent* on the parent application.  Rather, the courts treated the later applications as continuations of the original applications because they found there had been no *abandonment*.  *See Smith v. Goodyear Dental Vulcanite Co.*, 93 U.S. 486, 500 (1876); *Clark Blade & Razor Co. v. Gillette Safety Razor Co.*, 194 F. 421, 422 (3d Cir. 1912); *Badische Anilin & Soda Fabrik v. A. Klipstein & Co.*, 125 F. 543, 555 (C.C.S.D.N.Y. 1903).  In any event, these cases simply applied *Godfrey v. Eames* and, like that case, said

nothing about how to treat a second application filed on the day of patenting of a first application.

Immersion further contends (at 27) that Section 120 codified without modification all pre-1952 case law, but even that is an overstatement. Indeed, one of Immersion's own cases noted that "mere codification, without modification, was not intended" and recognized that "[i]n the event of a point not addressed by the case law or an inconsistency between the case law and the statute, the statute, of course, prevails." *In re Bauman*, 683 F.2d 405, 409 n.7 (C.C.P.A. 1982). The statutory text thus prevails regardless of whether the meaning of "before the patenting" was not previously addressed by the case law (as HTC contends) or there is an inconsistency between the wording of the current statute and the previous case law (as Immersion contends).

*In re Henriksen*, 399 F.2d 253 (C.C.P.A. 1968), also did not hold that Section 120 adopted all prior case law. Immersion quotes (at 27) from the Court's recitation of revision notes, but the Court recognized that those notes were "terse" and it quoted legislative history for the proposition that "Sections 120 and 121 express in the statute certain matters which exist in the law today but which had not before been written into the statute, and in so doing makes some minor changes in the concepts involved." *Id.* at 258 & n.13. In any event, *Henriksen* addressed

how many intervening applications are allowed and provided no guidance on Congress's intentions regarding filing deadlines.

Immersion's reliance on *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551 (Fed. Cir. 1994), is similarly misplaced. The portions that Immersion cites (at 27) addressed a different clause of Section 120 ("shall have the same effect") and concluded that that phrase carried forward previous case law's treatment of continuation applications as "parts of the same transaction" such that they have the same effective filing date. *Id.* at 556-57. *Transco* did not address the filing deadline at issue here, much less assert that Section 120 codified all preceding common law without modification. In any event, Section 120 requires a continuation application to be filed "before the patenting" of its parent application in order to obtain the benefit of the parent's filing date. And neither Immersion nor the PTO may defy that requirement.

Ultimately, the few legislative records that Immersion cites discuss neither the meaning of "before" nor whether a follow-on application may be filed on the same day a patent issues and receive the benefit of the patent's filing date. As the Supreme Court explained in *Locke*, "[g]oing behind the plain language of a statute in search of a possibly contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances." 471 U.S. at 95-96. Even assuming a "clearly expressed legislative intention to the contrary" could overcome the plain

language of the statute, *see Consumer Prods. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980), no such intent appears here.

### 5.    Congress has not "ratified" the PTO's obscure practice by its silence

Immersion contends (at 29-33) that Congress silently "ratified" the PTO's practice of treating continuations filed on the day of a parent's patenting as filed "before" that patenting. But there is no evidence that Congress was aware of the PTO's practice, and this Court has rejected a similar argument *en banc*.

In *In re Donaldson Co.*, 16 F.3d 1189 (Fed. Cir. 1994) (en banc), "[t]he Commissioner argue[d] that his interpretation [wa]s entitled to deference in view of what the Commissioner allege[d] [wa]s the PTO's sweeping and long-standing practice of not applying [Section 112] paragraph 6 during examination." But this Court unanimously rejected that view, saying "[t]he fact that the PTO may have failed to adhere to a statutory mandate over an extended period of time does not justify its continuing to do so." *Id.* at 1194. This Court's words there are equally apt here: "There is no evidence that, at the time of [the statutory amendments], Congress was specifically aware of the PTO's allegedly sweeping practice … or of any CCPA decision condoning such a practice, and we do not find this reenactment without awareness to indicate clear Congressional approval or disapproval." *Id.* at 1194 n.3.

Immersion cites no cases holding that Congress can "ratify" an obscure PTO practice of which it was unaware. Instead, Immersion's cases involved situations where Congress both knew about and approved an agency's regulation.[6] Here, there is no evidence that Congress knew or approved of the PTO's practice. Immersion presumes Congress must have known, but members of Congress do not spend their time reading the MPEP. Cases in which Congress is presumed to know of a rule are ones in which a judicial consensus has developed. For example, *Microsoft Corp. v. i4i Limited Partnership*, 131 S. Ct. 2238 (2011), involved a fundamental standard of proof repeated in nearly every Supreme Court and Federal Circuit decision on invalidity in the past 80 years. *See id.* at 2245. And in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), "all nine Courts of Appeals to have addressed the question" had adopted the same view. *Id.* at 2511. Before this case, only one

---

[6] *See FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 437 (1986) ("Committees of both Houses of Congress explained the amendments: 'The amended definition would include … *the definition of deposits in the rules and regulations of the Federal Deposit Insurance Corporation.*'"); *Daewoo Elecs. Co. v. AFL-CIO*, 6 F.3d 1511, 1522 (Fed. Cir. 1993) (after reviewing the agency's practice, the House Committee Report stated "the Committee has agreed with this practice"); *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2410 (2015) ("Congress has rebuffed bills that would have replaced *Brulotte*'s per se rule with the same antitrust-style analysis Kimble now urges."); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 145 (2001) (Congress not only was aware of the availability of plant patents, but even passed a statute allowing them).

– 33 –

district judge had addressed this issue, and this Court declined to reach the issue when it was presented several years later, *see Encyclopaedia Britannica, Inc. v. Alpine Elecs of Am., Inc.*, 609 F.3d 1345, 1352 (Fed. Cir. 2010). The opinion of a single district court judge is nowhere near a "consensus," let alone one strong enough to assume that Congress knew of and deferred to it.

## B.    This Court should not defer to the MPEP's reading of "before" as meaning "on or before" and "not later than"

Immersion urges this Court to disregard the statutory text requiring continuations to be filed "before" patenting of the parent application and instead follow the PTO's view, expressed only in the MPEP, that a follow-on application may be deemed copending and gain the benefit of the filing date of a parent patent application if it is filed "on the same date, or before" the date that the parent patent issues. *See* MPEP § 201.11 at 200-66 (8th ed. 2001); MPEP § 211.01(b)(I) (9th ed. 2014). But the MPEP is not binding law, and the PTO lacks authority to construe Section 120 contrary to its plain language and settled precedent that "before" means "before," not "on or before."

### 1.    The MPEP is not entitled to *Chevron* deference

Immersion argues (at 33-37) that this Court should defer to the MPEP under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). But an agency's interpretation of a statute is entitled to *Chevron* deference only when "Congress delegated authority to the agency generally to make rules

carrying the force of law, and … the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001).  That is not the case here.

a.    To begin with, the MPEP is merely a non-binding agency manual that does not warrant *Chevron* deference.  In *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), the Supreme Court held that "interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."  The Court reaffirmed that principle in *Mead*, describing "policy statements, agency manuals, and enforce-ment guidelines" as "beyond the *Chevron* pale." 533 U.S. at 234; *see also Public Citizen, Inc. v. HHS*, 332 F.3d 654, 660 (D.C. Cir. 2003) (noting that "the Supreme Court has twice cited 'agency manuals' as an archetype of the kind of document that is not entitled to [*Chevron*] deference"); *Roman v. CIA*, 297 F.3d 1363, 1368-69 (Fed. Cir. 2002).  Instead, *Chevron* deference is limited to interpretations "pro-mulgated in the exercise of" an agency's "delegated authority … to make rules carrying the force of law." *Mead*, 533 U.S. at 226-27.  Here, the MPEP's Fore-word recognizes that "[t]he Manual does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations," and this Court has con-firmed that the MPEP merely "sets forth PTO procedures; it is not a statement of law," *Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1121 (Fed. Cir. 2003).

Immersion asserts (at 34) that "[t]his Court has held that MPEP provisions interpreting procedural statutes warrant *Chevron* deference," but its cases say no such thing. In *Cooper Technologies Co. v. Dudas*, 536 F.3d 1330 (Fed. Cir. 2008), the Court deferred to the PTO's interpretation of a statute establishing the inter partes reexamination procedure, but that interpretation had been established in a notice-and-comment rulemaking. *Id.* at 1333-34. Deferring to an interpretation established in a rulemaking is consistent with *Christensen* and *Mead*; deferring to an interpretation set out only in the MPEP is not. In *Bettcher Industries, Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 646 (Fed. Cir. 2011), Immersion's other case, this Court relied on its own reading of the statutory language, which it determined to be "clear." Although the Court went on to address the PTO's interpretation, that discussion was dictum and does not support the broad rule that Immersion advocates.

b.    While Immersion relies on the MPEP, the government argues for *Chevron* deference (at 25-26) on the theory that the PTO's interpretation is set out in a regulation. That is incorrect. The pertinent regulation says only that "an applicant in a nonprovisional application … may claim the benefit of one or more prior-filed copending nonprovisional applications … under the conditions set forth in 35 U.S.C. § 120 and paragraph (d) of this section." 37 C.F.R. § 1.78(d). This restatement of Section 120 is uncontroversial because a parent application ceases to be "pending" when the patent on that application issues. The government's

discussion of Section 1.78(d) begs the question because it assumes a continuation application can be copending with a parent application if filed on the same day that the patent on the parent application is issued. Even if that view of copendency were correct—as explained above, it contradicts the statute—it would not be entitled to *Chevron* deference because it is not a view set out in the regulation.

c.    The *Chevron* arguments of Immersion and the government also fail for an independent reason: *Chevron* deference applies only to agencies that have rulemaking authority, and as a general matter the PTO does *not* have authority to issue regulations that interpret substantive patent law. *See*, *e.g.*, *Merck & Co. v. Kessler*, 80 F.3d 1543, 1549-50 (Fed. Cir.1996) (recognizing that "Congress has not vested the Commissioner with any general substantive rulemaking power"). This Court does not, for example, defer to the PTO's interpretations of 35 U.S.C. §§ 101, 102, 103, and 112. Rather, the PTO must follow patent law as construed by the Supreme Court and this Court. The PTO does have statutory authority to establish regulations "govern[ing] the conduct of proceedings in the Office," but even such procedural regulations must be "not inconsistent with law." 35 U.S.C. § 2(b)(2)(A).

According to Immersion (at 35), "the PTO's interpretation of Section 120's copendency requirement is procedural," not substantive, "as it turns entirely on timing requirements for filing paperwork with the PTO and issuance of PTO

administrative determinations." But Immersion mischaracterizes the issue. In 35 U.S.C. § 21(a), Congress authorized the PTO to deem an application filed when deposited with the Postal Service. Moreover, as a practical matter, the PTO can decide on what day it will issue a patent once the examiner has allowed the claims. But those dates are not disputed in this case: everyone agrees that both filing and patenting occurred on August 6, 2002. The real dispute is whether filing on the day of patenting counts as a filing "before" patenting.

Contrary to Immersion's suggestion, that critical question is not a mere procedural matter. As its title indicates, Section 120 dictates when a later-filed application receives the benefit of the filing date of a previously filed application. That is a *substantive* matter because it determines the scope of prior art that may invalidate the claims. The statute sets out specific substantive-law conditions for obtaining the benefit of an earlier-filed application, including filing the later application "before the patenting" of the first application. The PTO is entitled to no more deference on this issue than it would be in deciding what "more than one year prior to" an application date means for purposes of the Section 102(b) bar.

The cases on which Immersion relies (at 34) do not help it. In *Stevens v. Tamai*, 366 F.3d 1325, 1333 (Fed. Cir. 2004), this Court upheld the PTO's authority to require a party seeking the benefit of a foreign patent application to submit a translation and translator's affidavit. But that requirement was an exercise of the

– 38 –

（空）

agency's Section 2(b)(2)(A) power to regulate "the conduct of proceedings in the Office," especially in view of 35 U.S.C. § 372(b)(3), which authorizes the Director to "require a verification of the translation of the international application or any other document pertaining to the application if the application or other document was filed in a language other than English." Similarly, *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006), involved the PTO's express authority under Section 2(b)(2)(D) to regulate "recognition and conduct" of attorneys that practice before it. Neither case suggests that interpreting Section 120 is within the PTO's rulemaking authority.

### 2.    Even if *Chevron* applied, the MPEP's interpretation could not withstand scrutiny

Even if *Chevron* applied, it would not save the MPEP's interpretation of Section 120. Because that interpretation contradicts the unambiguous text of the statute, it fails to survive step one of *Chevron*. Moreover, even if Section 120 were deemed ambiguous, the PTO's interpretation should be rejected at step two because it is an unreasonable interpretation of the statute. *See* 467 U.S. at 842.

At *Chevron* step one, "a reviewing court must first ask whether Congress has directly spoken to the precise question at issue. If Congress has done so, the inquiry is at an end." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). Here, Section 120 is not "silent or ambiguous with respect to the specific issue" of when a continuation must be filed in order to get the parent's

priority date. *See Chevron*, 467 U.S. at 843. The statute says "before," not "on or before." As the Supreme Court held in *Locke*, "before" has "obviously different substantive content" from "on or before." 471 U.S. at 96 n.11. *Chevron* cannot justify reading a statute that plainly requires filing "before" a deadline to allow filing "on the same date or before" that deadline.

This Court has repeatedly refused to defer to MPEP policy pronouncements when they contradict statutes. For example, in *In re Portola Packaging, Inc.*, 110 F.3d 786 (Fed. Cir. 1997), this Court held that MPEP § 2258 misconstrued "substantial new question of patentability" contrary to the mandate of the reexamination statute. *Id.* at 791. Similarly, in *In re Longi*, 759 F.2d 887 (Fed. Cir. 1985), this Court held that a double-patenting rejection was proper despite contrary language in MPEP § 804.03 and a Commissioner's Notice on Double Patenting, pointing out that the Court had never approved those guidelines. *Id.* at 894. And in *Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988), this Court held that the PTO could not lawfully stay a reexamination pending a district court decision even though MPEP § 2286 said it could—because the MPEP was wrong. *Id.* at 1427-29. Simply put, the PTO is not free to contradict statutes, and if the MPEP conflicts with a statute, the statute controls.

The government identifies (at 19) various "practical" advantages of its interpretation, including that it "provides a clear rule for applicants and examiners to

follow." But reading the statute as it is written—construing "before" to mean "before"—provides an equally clear rule. More important, even if the PTO's interpretation were easier to apply, that would not justify disregarding the statutory text. As the Supreme Court has cautioned, "the power of executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law's administration," but it "does not include a power to revise clear statutory terms that turn out not to work in practice." *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2446 (2014).

### 3.    *Auer* deference does not apply here

Immersion next argues (at 38) that the Court should defer to the MPEP provision under *Auer v. Robbins*, 519 U.S. 452, 456-58 (1997), as an interpretation of 37 C.F.R. § 1.78(d)'s "copendency" requirement. But *Auer* deference does not apply for at least three reasons.

First, *Auer* presumes that the agency has the authority to issue the regulation. 519 U.S. at 457. As discussed above, Congress did not authorize the PTO to regulate substantive patent-law matters such as when a later-filed application receives the benefit of an earlier application's filing date and the resulting scope of prior art. This Court is not required to defer to an interpretation of a regulation by an agency that had no authority to regulate in the first place.

– 41 –

Second, *Auer* deference is proper only when Congress has not addressed an issue by statute and the agency is construing one of its own regulations to fill that void.  In *Auer*, for example, the Secretary of Labor was interpreting a salary-basis test that was "a creature of the Secretary's own creation," so the Supreme Court deemed that interpretation controlling "unless plainly erroneous or inconsistent with the regulation."  *Id.* at 457 (quotation marks omitted).  But when Congress *has* spoken to an issue, neither *Chevron* nor *Auer* deference is appropriate.  *Brown & Williamson*, 529 U.S. at 132.  As discussed above, Congress clearly spoke to this issue in Section 120 and used the word "before," which has a plain, judicially settled meaning conceded by Immersion:  earlier in time.

Third, *Auer* deference applies only when the agency is truly construing its own regulation rather than the statute.  Immersion contends that the PTO has interpreted the "copendency" requirement of 37 C.F.R. § 1.78(d), but that regulation merely rephrases the "before the patenting" requirement of 35 U.S.C. § 120.  As in *Gonzales v. Oregon*, 546 U.S. 243 (2006), "the underlying regulation does little more than restate the terms of the statute itself … and the near equivalence of the statute and regulation belies the … argument for *Auer* deference."  *Id.* at 257; *see also Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 149 (2008) (declining to give deference to an agency manual interpreting a regulation because "on its face, the regulation does little more than restate the terms of the statute itself").  The MPEP section

– 42 –

refers to the language of the statute as well as the regulation and "is appropriately reviewed not as an interpretation of the [agency's] own regulation … but rather as an interpretation of the statute itself." *Sursely v. Peake*, 551 F.3d 1351, 1355 (Fed. Cir. 2009). Notably, Immersion "does not suggest that [the PTO's] interpretation turns on any difference between the statutory and regulatory language." *Gonzales*, 546 U.S. at 257. And even if it did, the statute would control, not the regulation.[7]

### 4.    *Skidmore* deference is not warranted because the PTO's interpretation is unpersuasive

Immersion also asks (at 38-39) for deference to the PTO's interpretation under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). But *Skidmore* is the weakest form of deference:  it applies only "to the extent [agency] interpretations have the 'power to persuade,'" *Christensen*, 529 U.S. at 587, and only when the agency is interpreting "ambiguous statutory dictates," *Cathedral Candle Co. v. ITC,* 400 F.3d 1352, 1365-66 (Fed. Cir. 2002). In assessing an interpretation's "power to per-suade," courts look to the "'thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements.'"

---

[7] Deference to the PTO's interpretation is also inappropriate because *Auer* was wrongly decided and should be overruled for the reasons discussed in the opinions of Justices Scalia, Thomas, and Alito in *Perez v. Mortgage Bankers Association*, 135 S. Ct. 1199, 1210-25 (2015). This Court is currently bound by *Auer*, but HTC preserves this issue for Supreme Court review.

*Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1352 (2015).  Here, those factors counsel against deference.

As to the "thoroughness evident in [the agency's] consideration" in the MPEP provision and the "validity of its reasoning," the MPEP simply asserts that filing on the same day is sufficient, without explaining how that conclusion follows from the statutory text.  Indeed, the government acknowledges (at 28), with considerable understatement, that the MPEP does "not contain an extensive explanation for the agency's interpretation."

Nor is the PTO's interpretation "consistent[ ] with earlier and later pronouncements" of the agency.  The 1953 version of the MPEP, issued shortly after Section 120's enactment in 1952, confirmed that a second application had to be filed "before the patenting of the first application" to be entitled to the first application's filing date:

> If the first application issues as a patent, it is sufficient for the second application to be copending with it if the second application is filed *before the patenting of the first application*.  Thus, the second application may be filed while the first is still pending before the Examiner, while it is in issue, or even between the time the final fee is paid and the patent issues.

MPEP § 201.11 (2d ed. 1953) (emphasis added).[8]

---

[8] The second sentence, which allows the second application to be filed when

(footnote continued on next page)

Only later did the PTO amend the MPEP to provide—contrary to the statute—that it is sufficient for a second application to be filed "on the same day or before" the patenting of the first application.  MPEP § 201.11 (3d ed. 1961).  The Office did not explain the change in § 201.11 in that section, but another section of the Third Edition discussing "termination of proceedings" asserted that "'[b]efore' has been consistently interpreted, in this context, to mean 'not later than'."  MPEP § 711.02(c) (3d ed. 1961).  Thus, contrary to Immersion's claim (at 21) that "there is no disagreement over the meaning of the word 'before,'" the PTO's contemporaneous articulation of its rationale rested on an improper equation of "before" with "on or before" and "not later than."

Nothing in the MPEP reflects an "interpretation" of the time of filing of an application or issuance of a patent.  The government now suggests such a rationale (at 15), but as explained above, it is inconsistent with the agency's practice of determining filing and issuance based on dates, not times of day.  In any event, the government's asserted rationale is a *post hoc* rationalization of counsel.  *Cf. Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011) (affording *Skidmore* deference to an agency's interpretation based on a conclusion that it

_____

the first application is "in issue," is fully consistent with the first sentence.  In PTO terminology, an application is "in issue" "from the date of the notice of allowance … until it issues as a patent."  *See* MPEP § 203.04 (2d ed. 1953).  Once patenting occurs, an application is no longer "in issue."

"reflect[ed] careful consideration, not *post hoc* rationalization") (internal quotation marks and brackets omitted).

Moreover, the current MPEP is not even internally consistent in its treatment of "before."  In another section, the PTO has interpreted the word "before" to *exclude* same-day filings.  37 C.F.R. § 1.138(d) provides for refunds of application fees if an applicant petitions to abandon an application "before an examination has been made of the application."  Interpreting that rule, the MPEP declares that "before" means "earlier in time," *not* the same day:

> For purposes of 37 CFR 1.138(d), "before" means occurring earlier in time, in that if a petition under 37 CFR 1.138(d) is filed and an action is counted on the same day, the petition under 37 CFR 1.138(d) was not filed before an examination has been made of the application.

MPEP § 711.01(III) (9th ed. 2014).  The PTO has not reconciled this internal inconsistency, much less addressed its defiance of *Locke*.

Ultimately, there is no statutory ambiguity here, and the MPEP's *ipse dixit* that "before" means "on the same date *or* before" defies the settled legal meaning of "before."  As this Court recognized in *PhotoCure ASA v. Kappos*, 603 F.3d 1372 (Fed. Cir. 2010), "[e]ven if some level of deference were owed to the PTO's interpretation, neither *Chevron* nor *Skidmore* permits a court to defer to an incorrect agency interpretation."  *Id.* at 1376 (rejecting PTO's interpretation of drug product patent term extension statute); *see also Wyeth v. Kappos*, 591 F.3d 1364,

1372 (Fed. Cir. 2010) (rejecting PTO interpretation of patent term adjustment statute: "Because the language of the statute itself controls this case and sets an unambiguous rule for overlapping extensions, this court detects no reason to afford special deference to the PTO's interpretation.").

This case differs markedly from *Cathedral Candle*, where this Court upheld an agency's interpretation because, among other things, the interpretation was contemporaneous with the enactment of the statute and consistently followed since; the agency explained its rationale for the policy before the litigation; the agency took consistent positions on similar issues; the interpretation involved specialized expertise; and the agency had reasonably harmonized two potentially conflicting statutes. 400 F.3d at 1367. Here, the PTO changed the MPEP language from "before" to "on or before" nearly a decade after Section 120 was enacted; the PTO has given no reasoned basis for its interpretation apart from its belated *amicus* brief here; in other contexts the PTO interprets "before" to *exclude* same day filings; no "special expertise" in patent law is needed to say whether one date is "before" another; and the PTO has not purported to harmonize two inconsistent statutes.[9]

---

[9] Immersion's reliance on *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), is also misplaced, as that case involved conflicting statutes with "[n]o clearer alternatives" for resolving the conflict than what the agency presented. *Id.* at 400-02. There is no statutory conflict here, and the most straightforward approach is to read "before" as meaning "before."

### C. Reliance interests do not justify perpetuating the PTO's misinterpretation of Section 120

Immersion next urges (at 39-41) that "reliance interests" justify perpetuating the PTO's reading, no matter how mistaken it may be. They do not.

1. To begin with, although Immersion asserts (at 40) that "inventors have relied on the PTO's time-honored rule permitting same-day filing of continuation applications," the PTO itself has made clear that no such reliance is warranted. The same section of the MPEP on which Immersion relies cautions applicants against waiting to file continuation applications: "Applicants are encouraged to file any continuing applications no later than the date the issue fee is paid, to avoid issuance of the prior application before the continuing application is filed." MPEP § 201.11 at 200-66 (8th ed. 2001), § 211.01(b)(I) (9th ed. 2014). Applicants following the MPEP's guidance would not have waited to file until the very day the parent patent issued and would not be affected by the outcome of this case. And applicants who did delay until "the last day"—actually the day after the last day—did so at their peril.

2. Even if the MPEP had not discouraged Immersion's behavior, an agency's internal operating manual, by itself, cannot engender reliance interests that justify disregarding the plain statutory language. Immersion's cases illustrate that point because they involved the application of *stare decisis* to settled Supreme Court precedent. *See*, *e.g., Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401 (2015)

– 48 –

(retaining 50-year-old Supreme Court precedent prohibiting royalties after patent expiration); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997) (retaining the longstanding doctrine of equivalents).  Here, the PTO's interpretation has no longstanding judicial blessing by any court.

Although Immersion tries to fashion a "consensus," the reality is that only two district judges have addressed this issue, one (Judge Andrews here) coming out HTC's way and the other (Judge Crabb in *MOAEC, Inc. v. MusicIP Corp.*, 568 F. Supp. 2d 978, 982 (W.D. Wis. 2008), and *Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, 45 F. Supp. 3d 881, 910 (W.D. Wis. 2014)) supporting Immersion's position. This Court noted the issue in *Encyclopaedia Britannica*, 609 F.3d at 1352, but declined to decide it, making clear that it was still open.  Immersion purports to cite (at 31) an ITC decision, but the cited document was merely a *brief* by ITC *staff*.  *See* Staff's Response to Respondents' Motion to Summary Determination Regarding Priority Dates, *In re Certain Video Game Sys.*, No. 337-TA-770, 2011 WL 7092316 (Dec. 22, 2011).  The Commission adopted no such reading.

In short, anyone considering filing a continuation application in 2002 would have found scant authority suggesting that it was safe to wait until the day of issuance before doing so.  Immersion has only itself to blame itself for its current predicament.  There was no reason for Immersion to wait months after the PTO's notice of allowance and weeks after its notice of issuance and file its follow-on

application on the day the '846 patent issued. Immersion took a gamble by betting that "before" did not mean "before," and it lost.

3.    The suggestion by Immersion and its *amici* that an affirmance will have catastrophic effects is overblown. This issue has arisen in only a handful of cases, and affirmance will not wreak havoc in the future. Immersion provides no evidence of the number of patents that would be in jeopardy, and the *amicus* briefs produce different estimates with no replicable methodology, so it is difficult to assess their accuracy. In any event, Immersion and its *amici* ignore that an applicant's failure to file a follow-on application before patenting of the parent does not automatically invalidate any claims. It simply means that the second application will have a later effective filing date, which may or may not result in invalidity over prior art.

In reality, the rule at issue will determine outcomes only when all six of the following conditions apply:

(1)  despite notices of both allowance and the precise issue date, the applicant delayed filing the follow-on application until the very day that the parent patent issued;

(2)  the second application resulted in an issued patent;

(3)  the owner paid maintenance fees to keep that patent in force;

(4)  the patent proved valuable enough to be asserted;

(5) art dated between the priority date of the first patent and the

   priority date of the second patent invalidated the claims; *and*

(6) the claims would not have been invalid, not infringed, or

   unenforceable for other reasons.

Immersion and its *amici* consider only the first condition, and cases in which all six

conditions apply will be rare.

Ironically, Immersion's own citations demonstrate that rarity, as in most the

courts found the claims invalid for other reasons. *See Encyclopaedia Britannica*,

609 F.3d at 1352 (invalidity due to another requirement of Section 120); Initial

Determination, *In re Certain Video Game Sys.*, Inv. No. 337-TA-770, 2012 WL

4480570, at *29, *34, *36 (Aug. 31, 2012) (ALJ finding invalidity for lack of

enablement, lack of written description, lack of domestic industry, and non-

infringement), *aff'd in relevant part*, 2012 WL 6936114 (ITC Nov. 6, 2012);

*Merch. Techs., Inc. v. Telefonix, Inc.*, No. 05-CV-1195-BR, 2007 WL 464710, at

*11 (D. Or. Feb. 7, 2007) (claims dismissed for lack of subject-matter jurisdiction).

Even in *MOAEC* and *Ultratec*, the priority date would not have affected the out-

come of the case because the patentee still lost. *See MOAEC, Inc. v. Pandora*

*Media, Inc.*, 607 F. Supp. 2d 980, 1005 (W.D. Wis. 2009) (granting summary

judgment of non-infringement), *appeal dismissed*, 363 F. App'x 739 (Fed. Cir.

2009); *Ultratec, Inc. v. CaptionCall, LLC*, 611 F. App'x 720 (Fed. Cir. 2015)

(noting that PTAB had invalidated all but one tried claim on *inter partes* review and was still considering the remaining claim).

Tellingly, Immersion's Statement of Related Cases says that Immersion "knows of no other case pending in this or any other court that will directly affect or be affected by this Court's decision in this appeal." That alone is reason to discount its claims that the sky is falling.

### D.   The district court correctly recognized that Immersion did not carry its burden of producing evidence of an earlier filing date once HTC made a *prima facie* case of invalidity

HTC undisputedly established a *prima facie* case of invalidity by showing that an international counterpart of the application that produced the '846 patent was published on July 26, 2001, A503, years before the actual 2006 and 2007 filing dates of the patents on appeal, A67; A46; A23. As a matter of law, that showing shifted the burden to Immersion to produce evidence of an earlier effective filing date such that the published foreign application would not qualify as prior art under 35 U.S.C. § 102(b). Absent evidence from Immersion that Immersion was entitled to an earlier effective filing date, HTC was entitled to summary judgment. *See*, *e.g.*, *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 870 (Fed. Cir. 2010); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008).

Immersion concedes (at 44-45) that it bore this burden of production, and it failed to carry that burden because it presented no evidence (as opposed to attorney argument) that the patents on appeal were entitled to filing dates that could prevent anticipation by the foreign application. Immersion did show that the '940 application was filed on August 6, 2002, but it did not produce any evidence that that application was filed "before" the patenting of the '846 patent on that date and thus entitled to the '846 patent's filing date. Under the correct statutory interpretation, all the evidence showed that the '940 application was not entitled to a filing date before the critical date, rendering the appealed patents invalid.

There was no genuine dispute of material fact. The '940 application was undisputedly mailed *on* August 6, 2002, not *before* August 6, 2002. Immersion could not create a triable issue of fact by relying on its statutory interpretation equating "before" with "on or before," as matters of law are not issues of fact for a jury. *See Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1552 (Fed. Cir. 1997) ("Statutory interpretation is a pure question of law, subject to complete and independent review by this court."); *Bradford Co. v. Conteyor*, 603 F.3d 1262, 1268 (Fed. Cir. 2010) ("Determination of a priority date is purely a question of law if the facts underlying that determination are undisputed.").

Nor can Immersion rely on the patents' facial claim to be continuations of continuations leading back to the '846 patent. Even if the '940 application could

be deemed a "continuation" of the application that produced the '846 patent in the sense that the two shared the same written description, the '940 application could not receive the benefit of the filing date of the '846 patent because it did not satisfy the timing requirement of Section 120.

To be sure, we do not know exactly what time of day Immersion's patent counsel mailed the '940 application on August 6, 2002, but we do know it was on rather than before August 6, 2002, and that was too late as a matter of law. Indeed, even if filing "before the patenting" were evaluated instantaneously and thus turned on the precise time of day of mailing, HTC would still be entitled to summary judgment for two separate reasons. First, even a stroke-of-midnight filing in San Francisco could not have taken place before the patenting of the '846 patent, which took effect at midnight Eastern time. Second, even ignoring the three-hour time difference and even assuming (as the district court did) that patents do not necessarily go into effect at midnight, Immersion bore the burden of coming forward with evidence of filing before patenting, and it produced none. HTC's *prima facie* case of invalidity based on the July 2001 publication stood unrebutted.

Immersion argues (at 46) that "PTO officials have been obligated to examine applicants' claims to priority under Section 120." But this Court has recognized that "[i]n the absence of an interference or rejection which would require the PTO to make a determination of priority, the PTO does not make such findings as a

matter of course in prosecution." *PowerOasis*, 522 F.3d at 1305.  Moreover, even if the MPEP instructed examiners to make unnecessary findings (it does not), there is no evidence that this examiner made such findings.  What is more, even if there were evidence of such a review, that would show only that the PTO had applied the "on or before" standard in the MPEP, which contradicts Section 120.  Immersion's speculation that an examiner *might have* checked its application for compliance with an MPEP provision that misinterpreted the statute is not evidence that Immersion satisfied the statutory requirement to file the '940 application "before the patenting" of the '846 patent.

Immersion's reliance on *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008), is unfounded.  That case confirms that "once a challenger (the alleged infringer) has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, [i.e.,] prior art that is dated earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary." *Id.* at 1329.  There the patentee countered by arguing that an earlier application provided written description support for the claims at issue, entitling it to an earlier filing date, but this Court was not convinced and affirmed the district court's anticipation ruling. *Id.* at 1334.  Here the issue is not written description support in the previous application, but whether the '940 application was filed

"before patenting" of the '846 patent.  And as just discussed, Immersion presented no evidence that it was filed before—only evidence that it was filed on the same day.  That evidence was not sufficient to create a genuine issue of material fact regarding validity.  Summary judgment of invalidity was therefore proper both procedurally and substantively.

## CONCLUSION

The judgment should be affirmed.

Respectfully submitted,

PERKINS COIE LLP

by /s/Dan L. Bagatell
Dan L. Bagatell

Counsel for Appellees

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 13,777 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2010 and 14-point Times New Roman type.

Dated:  November 16, 2015.          /s/Dan L. Bagatell

                                                          Dan L. Bagatell

**PROOF OF SERVICE**

In accordance with Federal Rule of Appellate Procedure 25 and Federal

Circuit Rule 25, I certify that I caused this brief to be served via the Federal

Circuit's CM/ECF system on counsel of record for all parties.

I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct.

Dated:  November 16, 2015.


＿＿＿＿＿/s/Dan L. Bagatell＿＿＿＿＿＿＿
Dan L. Bagatell

# STATUTE, REGULATION, AND MPEP SECTION AT ISSUE

## Former 35 U.S.C. § 120 first sentence

### § 120.  Benefit of an earlier filing date in the United States

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, or as provided by section 363 of this title, which is filed by an inventor or inventors named in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

## Former 37 C.F.R. § 1.78(d) first sentence

(d) *Claims under 35 U.S.C. 120, 121, or 365(c) for the benefit of a prior-filed nonprovisional application or international application.*  An applicant in a nonprovisional application (including a nonprovisional application resulting from an international application entering the national stage under 35 U.S.C. 371) or an international application designating the United States of America may claim the benefit of one or more prior-filed copending nonprovisional applications or international applications designating the United States of America under the conditions set forth in 35 U.S.C. 120 and paragraph (d) of this section.

## Former MPEP § 201.11

Copendency is defined in the clause which requires that the second application must be filed before (1) the patenting, or (2) the abandonment of, or (3) the termination of proceedings in the first application.  …

If the first application issues as a patent, it is sufficient for the second application to be copending with it if the second application is filed on the same date, or before the date that the patent issues on the first application.  Thus, the second application may be filed under 37 CFR 1.53(b) while the first is still pending before the examiner, or is in issue, or even between the time the issue fee is paid and the patent issues.  In view of the new patent publication process, it is anticipated that utility patents will be published within four weeks of payment of the issue fee.  Applicants are encouraged to file any continuing applications no later than the date the issue fee is paid, to avoid issuance of the first application before the continuing application is filed.